| 94 | 351 |
|---|---|
| 206 | ²579 |

# Philadelphia and Reading Railroad Company *versus* Anderson.

1. Where, for a consideration, a railroad company undertakes to transport a passenger from one point of its line to another, there arises an implied contract on the part of the company that it has, for that purpose, provided a safe and sufficient road, and that its cars are safe and trustworthy.

2. Where a passenger is injured by an accident arising from a collision, or a defect in the machinery or roadway, he is required, in the first place, to prove no more than the fact of the accident and the extent of the injury; a prima facie case is thus made out, and the onus is cast upon the carrier to disprove negligence.

3. This prima facie presumption may be overthrown by proof, to the satisfaction of the jury, that the injury complained of resulted from inevitable accident, or from something against which no human prudence or foresight could provide.

4. Where an accident occurs by reason of the washing away of an embankment of a railroad because of insufficient drainage, the company will not be relieved of liability by the fact that the road was constructed under the supervision of a competent engineer, and that the drainage, at the point of the accident, was provided for in a manner directed and approved by him.

5. The fact that the defendant is the lessee of the road does not relieve it from the consequences of its own negligence, and it was bound to see that the road, whether owned or leased, was safe and sufficient between the points named on the passenger's ticket.

6. Where questions should not have been allowed, but the answers thereto are unexceptionable, this court will not reverse therefor.

7. Laing. *v.* Colder, 8 Barr 479; Sullivan *v.* Railroad Co., 6 Casey 234; Meier *v.* Railroad Co., 14 P. F. Smith 225; Railroad Co. *v.* Napheys, 9 Norris 135, followed; and Mansfield Coal Co. *v.* McEnery, 10 Id. 185, distinguished.

May 7th 1880.     Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.     SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Lancaster county* : Of May Term 1880, No. 106.

Trespass on the case by Harman Anderson against the Philadelphia & Reading Railroad Company, to recover damages for injuries alleged to have been received by reason of the negligence of defendant.

The declaration averred that Anderson on the 4th of October 1877 was a passenger in the cars of the defendant company; that while passing over the line of the Pickering Valley Railroad, which was leased and operated by the defendant, he was injured by the car in which he was riding being thrown from the track in the vicinity of Kimberton station, on the line of said road.

In the first count there was an averment of negligence on the part of the defendant and its servants generally in the management of the train.

In the second count, after an averment of the duty of the defendant to use proper care and skill in maintaining and keeping its tracks so that the plaintiff might be safely carried, of making up its train in a proper and safe manner, and of placing the locomotive in such a way that its headlight might show the condition of the track, it was alleged that by reason of a break in the track and embankment supporting it near Kimberton station, and by reason of the negligence of the defendant and its servants, the car in which the plaintiff was riding was thrown from the track, and plaintiff was injured.

In the third count, after an averment of the duty of the defendant to keep and maintain the track, embankments and culverts in good repair, and to erect and maintain culverts and drains suitable to pass water under the embankments wherever it was likely to flow, it was alleged that by reason of a washout of an embankment on the Pickering Valley road, caused by the negligence of the defendants and its servants, the car in which plaintiff was riding was thrown from the track.

At the trial, before Livingston, P. J., it appeared that Harman Anderson, on October 4th 1877, purchased a ticket at Chester Springs station on the Pickering Valley Railroad, to go to and return from Schwencksville, a station upon the Perkiomen Railroad. Both the Pickering Valley and Perkiomen Railroads were at that time operated by the Philadelphia and Reading Railroad Company

as lessee. The journey to Schwencksville was safely accomplished, and in the afternoon plaintiff left that place upon his return trip. The train in which he was a passenger arrived at Perkiomen Junction sometime before six o'clock, at which place, having changed cars, he proceeded by the main line of the Reading Railroad to Phœnixville, about two and a half miles, and having again changed cars at that point, proceeded, at 5.58· P. M., in a train of the Pickering Valley road, for his destination, Chester Springs. This latter train consisted of the engine reversed, two passenger cars and a milk-car, in the order named, and had proceeded about two and a half miles to a point a little east of Kimberton, when it was wrecked by running into a chasm formed by the washing out of an embankment, and Mr. Anderson, who was seated in the front part of the second passenger car, received the injuries, to recover compensation for which the present action was brought. The engine and the two passenger cars fell into the chasm ; the milk-car was left standing upon the brink. A number · of the passengers were killed, as were also the engineer and fireman of the train, and many more were injured.

No previous warning or signal of danger had been given by the engineer of the train, and as one of the plaintiff's witnesses testified, the first he knew of any danger was when he "felt a jolt in the car, and the lights all went out, and the hind end of the second car came crushing in on us."

The train had been running slowly, with the headlight burning.

The washing out of the embankment occurred during an unusual storm of rain and wind, which the defendant contended was of such a character as to defy all reasonable precautions adopted for the safety and security of the embankment, and that its destruction was due to an "act of God."

The plaintiff, however, contended that the accident was caused, not solely by the storm, but by that combined with the negligence of the defendant in running the train with the. engine reversed, and with the cars in the position they were, and in not constructing the embankment in a proper manner.

The defendants, inter alia, submitted the following points, to which are appended the answers of the court:

6. If the jury find that the railroad was constructed by the Pickering Valley Railroad Company under the supervision of a competent engineer, that the drainage at the place where the accident occurred was provided for in a manner directed or approved by him, that the road .was thereafter leased to the defendants, and that the embankment at the said place was subsequently washed out by a storm of unusual and extraordinary violence, then the defendants are not liable for any error of judgment on the part of such engineer as to the drainage, even if such error occasioned the accident.

Ans. "The sixth point we cannot affirm as stated. If the jury find from the evidence that the railroad was constructed by the Pickering Valley Railroad Company under the supervision of a competent engineer, that the drainage, of the embankment where the accident occurred was constructed in the manner directed and approved by him, was sufficient for the purpose of draining the area stated in the testimony in cases of ordinary and usual rainfalls and storms without injury to the embankment, that it was leased to the Philadelphia & Reading Railroad Company, and the drainage continued to be sufficient in cases of ordinary rainfalls and usual storms, up to the time of the accident, and that it was then washed out and broken by an unusual and extraordinary storm alone, the defendant would not be liable. But the fact that defendant had leased the road from another (who constructed it) and operated it, carrying passengers upon it, will not shield defendant from liability where an injury is sustained by reason of its negligence. Defendant is a common carrier of passengers, and as such is bound to see that its road, whether owned or leased, is safe and sufficient between the points indicated on the passenger's ticket. That is implied by his contract, and the condition of the rails and road-bed is a matter of at least equal importance to passengers with the condition of the cars in which they ride, and the road-bed must not only be properly constructed, but must be kept in good condition, at least so far as the carrier can secure it by care and diligence, and if defendant failed so to do it would be liable though only a lessee in the same manner and to the same extent as if it had constructed the road itself. For if there is any one duty more than another imperatively incumbent upon a railroad company, it is to have their track in a sound and safe condition."

7. That there is no evidence from which the jury can find the defendants liable to the plaintiff for the alleged negligence of running the locomotive backward with the tender in front.

8. That there is no evidence from which the jury can find the defendants liable to the plaintiff for the alleged negligence of running the train with the milk-car in the last place.

Ans. "We answer these points affirmatively. The matters contained in these points would not be sufficient without proof that they caused the accident or contributed directly to it; but the jury will consider the evidence relating to the matter contained in these points with the other evidence in the cause, in deciding whether or not defendant has been guilty of negligence."

In the general charge, the court, inter alia, said:

"The Supreme Court of Pennsylvania has said that [when a railroad company undertakes the transportation of a passenger for an agreed price, the contract implies that they are provided with a safe and sufficient railroad to the point indicated; that their cars

[Phila. & Reading Railroad Co. *v.* Anderson.]

are staunch and roadworthy.] (Fourteenth assignment of error.) That means have been taken beforehand to guard against every apparent danger that may beset the passengers; and that the servants in charge are tried, sober and competent men; that when in the performance of this contract a passenger is injured without fault on his part, the law raises prima facie a presumption of negligence and throws on the company the onus of showing that it did not exist; [that where a passenger, seated as Mr. Anderson has shown you he was, in a railroad car, is injured in a collision, or by the overthrow of a car, the breaking of an axle or other part of the machinery, he is not required to do more in the first instance than to prove the fact and show the nature and extent of his injury. A prima facie case is thus made out, and the onus is cast upon the carriers to disprove negligence.] * * * (Fifteenth assignment.)

"The plaintiff having proven that he purchased a ticket from a ticket agent of the railroad company at Chester Springs, entitling him, for the consideration paid, to a passage from that point to Schwencksville and return, on October 4th 1877; that he entered the cars on that day and seated himself therein as a passenger, and while in their car as a passenger he was injured at the time and place and in the manner stated by the witnesses; the law raises a presumption that his injuries were caused by the negligence of the defendant, which presumption may be rebutted by the defendant; [but plaintiff, by his proofs presented, made out what is termed in law a prima facie case, which had the defendant offered no evidence, would have entitled him to a verdict, and which threw on the defendant the onus or burden of disproving negligence.] * * * (Sixteenth assignment.)

[The presumption of law is, as we have stated to you, that the injuries of the plaintiff were caused by negligence on the part of the defendant. This legal presumption, which is only an inference from general experience, remains in force until a countervailing presumption of fact is established. It may be overthrown and repelled by the defendant proving to the satisfaction of the jury that the injury complained of resulted from "inevitable accident," or, as it is more commonly termed, the "act of God," or that it was caused by something against which no human foresight and prudence could provide.] (Seventeenth assignment.)

The other material questions raised in the court below will be found stated in the opinion of this court.

The verdict was for the plaintiff for $3500, and after judgment thereon the defendant took this writ, and alleged that the court erred, inter alia, as set forth in the above assignments of error.

*James E. Gowen, H. M. North* and *James Boyd,* for plaintiff in error.—To make a railroad company liable to a passenger for

injuries there must be shown a want of due care on the part of the company : Meier *v.* Pennsylvania Railroad Co., 14 P. F. Smith 225; Adams Express Co. *v.* Sharpless & Sons, 27 Id. 516. The carrier of passengers does not, by his contract, warrant the roadworthiness of his road and cars. He contracts for and is obliged only to take due care to carry the passenger safely : McPadden *v.* N. Y. C. Railroad Co., 44 N. Y. 478; Reedheard *v.* Midland Railway Co., 2 Q. B. 412; 4 Id. 379. It does not suffice for one suing for an injury received whilst a passenger in the defendant's cars, to prove simply that while being so carried he received an injury. The nature of the accident, and the circumstances attending it, must be such as have a tendency to prove negligence: Lackawanna and Western Railroad Co. *v.* Napheys, 9 Norris 135; Le Barron *v.* East Boston Ferry Co., 11 Allen (Mass.) 312; Latch *v.* Runmer Railway Co., 3 H. & N. 930; Deyo *v.* New York Central Railroad Co., 34 N. Y. 9. Here the carrier of passengers had shown that the embankment had been destroyed by an extraordinary storm, and it surely cannot be the law that he is bound to go further and show another defence to the action, namely, want of negligence upon his part. It would in effect be requiring him to prove two facts as a defence, the "act of God" and " due care" upon his part, either one of which would be a sufficient defence. See Memphis and Charleston Railroad Co. *v.* Reeves, 10 Wallace 176; Farnham *v.* Camden and Amboy Railroad Co., 5 P. F. Smith 53; Express Co. *v.* Sands, Id. 140; Patterson *v.* Clyde, 17 Id. 500; Forbes *v.* Dallett, 9 Phila. R. 515; Livezey *v.* Philadelphia, 14 P. F. Smith 106.

The court erred in the instruction to the jury that to entitle the plaintiff to claim exemption by reason of the act of God, the act must have been of such a character that no human foresight and prudence could have provided against it: Whart. on Negligence, sect. 557; Philadelphia and Reading Railroad Co. *v.* Adams, 8 Norris 31; Pennsylvania Railroad Co. *v.* Fries, 6 Id. 234. In providing drainage for the embankment, if the plans and directions of a competent and skilful engineer were followed, the defendant was relieved from all liability for the results of the accident: Ardesco Oil Co. *v.* Gilson, 13 P. F. Smith 146; Mansfield Coal Co. *v.* McEnery, 10 Norris 185.

*John H. Brinton, William Aug. Atlee, Charles H. Pennypacker* and *B. F. McAtee,* for defendant in error.—The charge of the court is in the language used by Judge Woodward in Sullivan *v.* Philadelphia and Reading Railroad Co., 6 Casey 234, which is twice referred to and approved in Meier *v.* Pennsylvania Railroad Co., 14 P. F. Smith 225, and approved *in ipsissimis verbis* in Delaware, Lackawanna and Western Railroad Co. *v.* Napheys, 9 Norris 135. If the injury was occasioned by the error of the

[Phila. & Reading Railroad Co. v. Anderson.]

engineer, then the engineer was not competent or he would not have committed the error; if it was occasioned by his negligence, then the defendant is responsible, for while carriers of passengers do not insure the safety of passengers, they certainly do contract that there has been no negligence in the construction or maintenance of the roadway or rolling-stock, and that there will be none in the running of the train. Nor can it make any difference that the defendant here occupies the position of a lessee. It was the carrier and it was the party to the contract; it contracted with the defendant that there had been no negligence in the construction or maintenance of the roadway over which it agreed to carry him, and that contract having been broken, it must answer for the breach. In Grote v. Chester and Hollyhead Railroad Co., 2 Exch. Rep. 251, cited and approved in Francis v. Cockrell, Law Rep., 5 Q. B. 184, the court says: "It cannot be contended that the defendants are not responsible for the accident merely on the ground that they have employed a competent person to construct the bridge." See also, Brehm v. The Great Western Railway Co., 34 Barb. 275.

Mr. Justice GORDON delivered the opinion of the court, May 24th 1880.

As those rulings of the court below which put the burthen of proof upon the defendant, plaintiff in error, have been treated in the argument in this court as of primary importance, we will first examine and dispose of the exceptions to them. These exceptions are numbered, respectively, 14, 15, 16 and 17, and the rulings of which they complain may be summed up as follows: that where for a consideration a railroad company undertakes to transport a passenger from one point of its line to another, there arises an implied contract, upon part of the company, that it has, for that purpose, provided a safe and sufficient road, and that its cars are sound and roadworthy; that where the passenger is injured by any accident arising from a collision or defect in machinery, he is required, in the first place, to prove no more than the fact of the accident and the extent of his injury; that a prima facie case is thus made out, and the onus is cast upon the carrier to disprove negligence; that, in the case trying, the legal presumption was that the injuries to the plaintiff were caused by the negligence of the defendant, and that this presumption continued until a countervailing presumption of fact was established. To this the learned judge added, that this prima facie presumption might be overthrown by proof, to the satisfaction of the jury, that the injury complained of resulted from inevitable accident, or from something against which no human prudence or foresight could provide. Now, we must say, the able argument of the learned counsel to the contrary notwithstanding, that a better summary of the law

governing cases of this kind could scarcely have been framed. It is, indeed, almost a transcript of the ruling of this court, as delivered by Mr. Justice WOODWARD, in Sullivan *v.* The Railroad Co., 6 Casey 234. The case referred to being in point, it ought, of itself, to settle this part of the present contention, unless there are other cases on our books which teach a contrary doctrine. But, so far from this being so, the very contrary is the fact. In Laing *v.* Colder, 8 Barr 479, Mr. Justice BELL says, when speaking of the responsibility of passenger carriers : "But though in legal contemplation they do not warrant the absolute safety of passengers, they are yet bound to the exercise of the utmost diligence and care. The slightest neglect against which human prudence and foresight may guard, and by which hurt or loss is occasioned, will render them liable to answer in damages. Nay, the mere happening of an injurious accident raises, prima facie, a presumption of neglect, and throws upon the carrier the onus of showing it did not exist. This punctilious attention to the safety of the passenger embraces the duty of providing strong and sufficient carriages, or other conveyances for the journey, in every respect, sea, road and river worthy ; safe and steady horses, or other means of progression, and skilful drivers, conductors and other agents, whose duty it is to use every precaution against danger." This language is certainly very strong, full and to the point, and Sullivan *v.* The Railroad Co. is but an iteration of it. Both these cases are cited by Mr. Justice AGNEW in Meier *v.* The Railroad Co., 14 P. F. Smith 225, and their language reiterated. Furthermore, in the case of the Delaware, Lackawanna & Western Railroad Co. *v.* Napheys, 9 Norris 135, Mr. Justice STERRETT makes use of the following language : " If a passenger seated in a railroad car is injured in a collision, or by the overthrow of a car, the breaking of a wheel, axle or other part of the machinery, he is not required to do more, in the first instance, than to prove the fact, and show the nature and extent of the injury. A prima facie case of negligence is thus made out, and the onus is cast upon the carrier to disprove negligence." It is thus manifest, that the rulings of the learned judge of the court below, on this point, are abundantly supported by the rulings of this court, and that the exceptions taken thereto must be dismissed. In immediate connection with this part of the case, the refusal of the court to affirm the defendant's sixth point may be considered. That point required the instruction, that if the railroad in question had been constructed under the supervision of a competent engineer, and that the drainage, at the place where the accident happened, was provided for in a manner directed and approved by him, that subsequently the road was leased to the defendant, and that the embankment was washed out by a storm of unusual violence, the defendant was not liable for any error of judgment of the engineer,

even if such error occasioned the accident.   This point, curiously enough, draws upon the doctrine of inevitable accident to help out a principle of law, sufficiently strong, in a proper case for its application, to stand alone.   It is a principle, the latest enunciation of which is found in the case of the Mansfield Coal and Coke Co. v. McEnery, 10 Norris 185, in which it was held to be a sufficient answer to an action brought by an employee, for an injury resulting from the falling of a bridge of the company by which he was employed, that such bridge had been built by a competent builder. But this doctrine can have no application to the case in hand, and for the very good reason that a passenger is not an employee.   The one by his contract is presumed to run the ordinary risks of the machinery and appliances he is engaged to supervise or use; he is also held to a knowledge of the character and obvious defects of such machinery and appliances, as well as the skill and habits of his co-servants.   A passenger, on the other hand, neither can know, nor is presumed to know, anything about these things.   He has paid for his passage, and he is wholly passive in the hands and at the mercy of the transportation company and its agents.   The doctrine advocated by the defendant's counsel, by which the passenger would be put on a par with an employee, will not do; it accords neither with reason nor precedent.   The cases of Grote v. The Chester and Hollyhead Railroad Co., 2 Ex. 251, and Francis v. Cockrell, Law Rep., 5 Q. B. 184, are full in point.   In the former, the action was by a passenger against a railroad company for damages resulting from the breaking down of a bridge whilst the train was passing over it, and it was held, that whilst it was a question for the jury, whether the defendant had engaged competent engineers, who had adopted the best method and used the best materials in the construction of the bridge, yet the mere fact of its having engaged such persons would not relieve it from the consequences of an accident arising from a deficiency in the work.   In the latter, the action was for damages resulting to the plaintiff from the breaking down of a grand stand, erected for the viewing of certain races, and which had been built by a competent person, and leased to the defendant, he, the defendant, having received a compensation from the plaintiff for admission to the stand; it was held, that the plaintiff could sustain an action against the defendant for the damage thus sustained, although the defendant was, himself, free from all negligence, and had employed a competent person to erect the stand.   In view of these authorities, we have no doubt but that this sixth point was properly refused, and that the court was right in saying to the jury that the mere fact of the defendant being a lessee of the road did not release it from the consequences of its own neglect, and that it was bound to see that its road, whether owned or leased, was safe and sufficient between the points indicated on the plaintiff's ticket.

The defendant's counsel, however, most earnestly contends that these rules do not apply to the case in hand, because the accident was occasioned by a condition of things which the company could neither foresee nor provide against; that it was the immediate result of the great rain storm which occurred at that time; a storm unprecedented in the history of the country, and one which set at defiance all human skill and prudence. This, however, was the very point in controversy, and the learned judge told the jury, that if the facts were as above stated, they must find for the defendant.

But he also told them that if the immediate cause of the disaster was the want of a proper construction or drainage of the embankment, the fact of the storm would not, of itself, avail as a defence. In this we think he was correct. The engineers who were examined on part of the plaintiff, were of the opinion that the embankment was not properly drained, that the arrangements for that purpose were faulty, and that had there been a culvert through it of proper dimensions, the rain-fall, great as it was, would have produced no serious impression upon it. It is true, indeed, that the experts produced upon part of the defendant were of a different opinion. But the jury believed the former rather than the latter; this they had a perfect right to do, and so the matter ends so far as either this court or the court below is concerned. In this connection we may notice the complaint embodied in the tenth assignment. John A. Wilson was asked by the defendant's counsel what practical experience he had as to the effect of a down-pour of rain upon a strong and well-built railroad embankment, when the case was not complicated by any question of drainage. On objection this question was ruled out. About the rectitude of this ruling we might have some doubt, but as the question was immediately afterward put in a slightly different form, and without objection, fully answered, we cannot see that the defendant has anything material of which to complain. The proposal to prove, by the same witness, that water is used in hydraulic mining, and that it gains force by being thrown from an elevation, was properly ruled out, since, however well it might have served to illustrate hydraulic mining in the west, it had nothing to do with the case in hand. The exceptions covered by the 3d, 4th, 5th, 6th, 7th, 8th and 9th assignments, seem, at first blush, far more serious, and the questions therein stated ought not to have been allowed; nevertheless, an examination of the testimony satisfies us that no harm was done thereby to the defendant, since the answers were such, and such only, as the plaintiff would have been entitled to had the questions been properly framed. The questions complained of were, "What, in your opinion, would be a proper method of building the road at that point?" and, "What, in your judgment, would it be proper for the lessee or user of a railroad to do at a point like

that, if he saw, when he took possession, no provision for drainage?" The first of these is objectionable in that it is too general and indefinite, and calls upon the witness for his opinion, not only upon what ought to have been done to insure the permanence and stability of the road at the point in controversy, but also, as to how it ought to have been constructed in every and all particulars, though such particulars might be foreign to the matter in issue— the proper drainage of the embankment. The second is less objectionable, since it calls the attention of the witnesses to the controverted point, the drainage as above stated. When, however, we come to examine the answers of the experts, we find them such as were legitimate and proper. Mr. Slaymaker says, "I would certainly adopt some way of passing the water which should gather in that basin." Mr. Wright: "I should think the proper thing would be to make provision for drainage such as the circumstances seemed to require." Mr. Sharpless: "I think it would be his duty," that is the lessee's, "to provide some means of drainage to get rid of the water;" and the testimony of Messrs. Osborne and Mifflin is of the same import. It will thus be seen that whilst the questions were not such as they ought to have been, the answers were unexceptionable, hence, no injury resulted to the defendant from the error committed by the court. Again, complaint is made of the answers to the defendant's 7th and 8th points. These points required the court to instruct the jury, that there was no evidence from which they could find the defendant liable to the plaintiff for alleged negligence in running the locomotive backwards, with the tender in front and milk-car in the rear. The answer was as follows: "We answer these points affirmatively. The matters contained in these points would not be sufficient without proof that they caused the accident, or contributed directly to it; but the jury will consider the evidence relating to the matters contained in these points with other evidence in the case, in deciding whether or not defendant has been guilty of negligence." This answer is somewhat ambiguous, but as it is more favorable to the defendant than it ought to have been, we cannot understand why it is complained of. Three locomotive engineers say that an engine running backwards cannot be so readily handled as when in its proper position, and that the light is unsteady and unreliable. Indeed, any one might know that running an engine hind end foremost, with the tender in front, especially at night and in a storm, when the utmost vigilance is required, was, in itself, a dangerous circumstance. Then, as to the position of the milk-car, it is sufficient to say that the defendant's own rules condemned that, and pronounced such an arrangement dangerous. In this instruction the court erred, but the error consisted in not negativing, and that emphatically, the defendant's points. We next turn to the first assignment, which complains of the admission of the question

put on part of the plaintiff, " What is your estimate of your injuries in money ?" This question ought not to have been permitted, but the exception is rather to the question than to the answer, for the answer simply amounts to nothing. It was, "I would sooner have my health than ten thousand dollars." This, of course, comes to nothing in the way of fixing value, and it was so treated by the court, for the jury was instructed that, upon this subject there was no evidence, and under proper directions that body was allowed to fix the damages as they should think just from all the circumstances of the case. Moreover, that this testimony produced no effect upon the jury, is obvious from the verdict. The error thus being harmless, we cannot reverse the case on account of it. In the remaining exceptions we discover nothing requiring comment, and without more they are dismissed.

Judgment affirmed.

A motion for a re-argument was subsequently made, which the court, on June 21st 1880, refused.