Lehman vs. Railroad Company.

## No. 1245.

### HENRY LEHMAN VS. LOUISIANA WESTERN RAILROAD COMPANY.

It is the clear duty of a railway carrier to provide safe egress from their cars for their passengers, to give due notice of arrival at stations, to allow passengers proper and sufficient time to alight, and to take care not to start the train while passengers are in the act of getting off. For neglect of such duties, resulting in injury to passengers, the carrier is responsible.

When a passenger, with his wife and children, is in the act of alighting from the train stopped at a station, and when the wife, with an infant in her arms, having reached the lower step of the car, is thrown violently to the ground by the sudden starting of the car, the husband's act in jumping off to her assistance while the train is in motion and leaving his other children of tender years on the platform, one of whom is injured in attempting to jump off after her parents, is not such contributory negligence as debars recovery for injury to the child. The acts of both the father and the child were the direct consequences of defendant's own misconduct, and falls within the well-settled rule that contributory negligence cannot be set up as a defense when such negligence was the result of tremor or excitement produced by the defendant's misconduct, or when the latter puts the plaintiff to a sudden election between the course which he took or submitting to a grave inconvenience.

APPEAL from the Twenty-fifth District Court, Parish of Lafayette. De Baillion, J.

*M. E. Girard* for Plaintiff and Appellee.

*D. Caffery* for Defendant and Appellant:

1. In a suit against a corporation, the existense of the corporation must be set out. The court cannot judicially recognize its existence. C. P. 112, 119, 198; 34 Ann. 963; 28 Ann. 415.

2. A citation issued against a defendant, not a natural person nor alleged to be an artificial person, and served, first, on "the agent of the nondescript defendant; and, second, on an individual who accepts service for another agent, is null and cannot be the foundation of suit or judgment." C. P. 198, 201; H. D. Citation; W. Nos. 2, 4, 6, 15.

3. When the circumstances of a case show that a party suing for damages for injury sustained from a railroad accident left the train while in motion, without necessity and without being placed in peril by the road, no recovery can be had. Redfield on Railway, sec. 194; Hutchinson on Carriers, sec. 643; Leading Eng. and Am. R. R. Cases, vol. 26, p. 351; 9 Ann. 441.

4. If in such a case the train stopped long enough to allow the passengers to get off at their station, and they lingered aboard beyond a reasonable and proper time to get off, the relation of carrier and passenger ceased, and the carrier is not answerable except for criminal negligence. Hutchinson, sec. 613; Redfield, sec. 613; Hutchinson, sec. 553.

5. Though defendant were in fault, if defendant's negligent act was the proximate cause of the injury, no recovery can be had. 34 Ann. 778, 139, 182; 27 Ann. 54; 30 Ann. 20; 32 Ann. 615; 33 Ann. 154; 5 Ann. 514; 9 Ann. 441; 11 Ann. 292; Redfield on Railways, sec. 193; 3 Ed, Sedgwick, p. 495; 5 Otto 411; Shearman and Redfield 25.

6. If the evidence shows that the injured child was traveling in company with and under the charge of her parents, and she is *non sui juris*, their negligence is her negligence. Thompson on Negligence, vol. 2, pp. 118, 1 183.

7. When the damages are excessive the verdict will be reduced.

The opinion of the Court was delivered by

FENNER, J.   The plaintiff, for the use and benefit of his minor child, Eva Lehman, sues the defendant for damages for injury to said child resulting from the alleged negligence of defendant or its employees.

He was met by two exceptions, which must first be disposed of:

1. The first exception sets up want of legal citation, and denies the jurisdiction of the court on the ground that its domicile is in the parish of Orleans.

The charter of the company, Act 21 of 1878, assigns it no domicile in the State; provides that it may be sued "only in the district courts of the parishes in which its railroad is constructed, of which the parish of Lafayette is one; and directs that service of process may be made "upon either the president, secretary, treasurer or any of the directors of said company resident in this State, or upon an agent or agents of the company resident in this State, and designated by the directors to receive such service."

Before instituting suit, plaintiff's attorney wrote to the general attorneys of the company, Messrs. Leovy & Kruttschnitt, of New Orleans, inquiring who were the agents, and received a reply designating A. C. Hutchinson and J. G. Schriever as such. Accordingly, the citation was served personally on Schriever, who also accepted service for Hutchinson. Neither by allegation nor proof is the agency denied. On the contrary, the proof, as far as it goes, sustains it.

The exception has no merit.

2. The other exception is that the petition does not allege or set forth that the defendant is a corporation, an association or a natural person.

The defendant was sued in its proper corporate name, and the objection was robbed of all force, if it had any, by the amendment made under direction of the judge.

### ON THE MERITS.

The evidence satisfies us as to the following facts:

Lehman, with his wife and six children, bought tickets for passage on the defendant's road from Lafayette Station to Scott Station, a distance of about five miles. They boarded the train and took seats in the rear passenger car. Through the failure of the conductor to reach that car before arrival at Scott, no employee of the company had informed himself as to whether or not there were passengers to get off at Scott. Shortly before reaching that station the brakeman called out

" Scott," and again called it out immediately on arriving.   He then got out on the platform and proceeded towards the front of the train, and within a very brief period, not exceeding a minute or minute and a half, gave the signal tor the starting of the car.

In the meantime, after the car stopped and with reasonable expedition, considering the character of his party, the plaintiff, with his wife, children and luggage, had proceeded to the platform of the car for the purpose of getting off.   Two of the children, boys, had just stepped off. Mrs. Lehman, with an infant in her arms, had reached the lower step of the car, while the father, with the luggage and the two little girls, was on the car platform.   At this moment the train started with the usual jerk, precipitating Mrs. Lehman, with her infant, off the step to the ground.   The husband immediately jumped after her.   This left the two little girls unprotected.   One of them was restrained by a passenger, while the other, Eva, seven years of age, was either thrown or attempted to jump off after her parents, and in so doing was caught between the two cars and suffered the injury complained of.

Nothing is better settled than that carriers owe to their passengers the duty of exercising a very high degree of diligence, care, skill and foresight, in order to carry them safely.   They are bound to the *diligentia diligentis patris-familias*—the diligence which a good specialist in that particular line of business would exercise, including all the care, caution and skill which common experience shows to be proper in order to secure safety.   The provision of safe methods of ingress and egress to and from their trains, the giving of due and proper notice of arrival at stations where passengers are to get out, the allowance of proper and sufficient time for passengers to debark at such stations, and due care not to start the train while passengers are in the act of getting off, are amongst the plainest and clearest features of the duties of the railway carrier to its passengers.

The evidence in this case exhibits a very gross infraction of these rules.

No care was taken to ascertain whether there were passengers to land at Scott Station.

The stoppage was excessively brief.   No diligence was used to learn whether passengers were in the act of getting off.   Had there been, it would have been seen that the plaintiff, with his party, were on the platform and steps of the car for that purpose at the moment when the train was started.   They had not been guilty of any unusual or unreasonable dilatoriness in getting off.   They had a right to suppose that the train would not start until they were safely landed.   The

wife was unquestionably on the bottom step of the car in the act of alighting when the car started, and the evidence leaves no doubt that she, with her infant in her arms, was precipitated to the ground by the jerk of the car. Had she or her child been injured, the liability of the company would have been clear beyond dispute.

But it is claimed that the act of the husband in jumping off after the train had started, thus abandoning his little girls, and the act of Eva in jumping after him, were faults which give rise to the defense of contributory negligence.

The evidence leaves it doubtful whether Eva jumped or was thrown off by a jerk of the car; but however that may be, the acts of the father and of the child were both the direct result of the negligence of the defendant.

When a man sees his wife and infant thrown violently from a car by the starting of a train, his natural and irresistible impulse is to jump to their assistance; and it is equally the impulse of a child when seeing herself about to be carried away from her parents to seek to join them. Their conduct, under such circumstances, is not to be judged by ordinary rules.

The rule is well settled that contributory negligence cannot be set up as a defense when such alleged negligence was the result of tremor and excitement produced by the defendant's misconduct, or when the latter's negligence puts the plaintiff to a sudden election between acting as he did or submitting to a grave inconvenience.

The rule has received a variety of applications. 2 Redfield on Railways, § 194 et seq.; Wharton on Neg., § 375, 377; 2 Thompson on Neg., p. 1174.

We consider that the facts of this case bring it clearly within the reason and spirit of the rule.

The accident resulted in such injury to the child as to necessitate the amputation of her left arm just above the elbow.

The jury returned a verdict of twelve thousand dollars. The evidence shows that plaintiff is a farm laborer, supporting his entire family, according to his own statement, on twenty dollars a month, and giving no education to his children. Under all the circumstances, we think the verdict should be reduced to five thousand dollars. It is therefore ordered, adjudged and decreed that the verdict and judgment appealed from be amended by reducing the principal thereof to five thousand dollars, and that, as thus amended, it be affirmed, appellees to pay costs of appeal.