(50 South. 522.)

No. 17,559.

TAYLOR v. E. C. PALMER & CO., Limited.

(Oct. 18, 1909.)

1. MASTER AND SERVANT (§ 196*)—INJURIES TO SERVANT—"FELLOW SERVANTS."

Under the settled jurisprudence of this state, the master is liable in damages to one servant, injured through the negligence of another servant in the performance of different work under their common employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 375–378, 486–488; Dec. Dig. § 196.*]

2. APPEAL AND ERROR (§ 1005*) — REVIEW — VERDICT APPROVED BY TRIAL COURT.

Contributory negligence is a question to be determined primarily by the jury, and when the verdict is approved by the trial judge the Supreme Court will not reverse the finding, except when clearly wrong on the face of the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3876, 3948–3954; Dec. Dig. § 1005.*]

3. APPEAL AND ERROR (§ 1004*) — REVIEW — AMOUNT OF DAMAGES.

The quantum of damages awarded by the jury in a case of personal injury will not be disturbed by the Supreme Court, unless the award be manifestly excessive or inadequate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by William G. Taylor against E. C. Palmer & Co., Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Richard & Vidrine, for appellant. James Barkeley Rosser, Jr., for appellee.

LAND, J. This is an action for damages for personal injuries alleged to have been sustained by the plaintiff, an employé of the defendant, in the discharge of a special and unusual duty assigned to him by the master himself.

Plaintiff's petition and amended petition were dismissed on an exception of no cause of action, and thereupon he appealed to this court. The judgment on the exception was reversed, and the cause remanded for further proceedings according to law. See 121 La. 710, 46 South. 703.

The cause was tried on the merits, and the defendant has appealed from a verdict and judgment in favor of the plaintiff for $2,500 and costs.

Plaintiff had been in the service of the defendant company as bookkeeper for 18 years. On the night of June 20, 1906, plaintiff was in the office engaged in the discharge of his clerical duties, when Mr. Palmer called him over the telephone, saying that it was raining and storming very heavily at his house, and he wanted to know if everything was all right at the store. According to plaintiff's version, he replied as follows:

"I told him that the storm had not reached downtown heavily, but that I would make a tour of the building before I went home. He said, 'All right.'"

Mr. Palmer testified:

"My recollection is that I asked him please to take a look around," and that it was quite likely that he used the words "and see if everything is all right."

Whatever may have been in Mr. Palmer's mind, he gave no particular instructions as to the inspection. The plaintiff was the only person on the premises, which consisted in part of three two-story warehouses used for storing paper. Plaintiff naturally construed Mr. Palmer's instructions to mean that he should inspect all the buildings, for the purpose of finding leaks that might damage the stock in trade. The plaintiff commenced the inspection, and, after locating a few small leaks, found that he needed assistance and lights. Thereupon he summoned his son,

and after procuring candles both proceeded to inspect the premises. They ascended a stairway to the upper story of the third and last warehouse, and on reaching the floor heard a trickling sound like the falling of water. Both moved forward with their lighted candles, and the plaintiff, who was in the lead, suddenly fell through an open hatchway, and was in consequence badly crippled in one foot.

The opening of this hatchway was five feet square. Trapdoors were provided for closing the hatch, and there was a movable railing around it. It was the duty of a certain employé to close this hatch every evening, and this duty, as a rule, was performed. This employé testified that he was "pretty sure" he closed the hatch the evening in question, but was "not so sure" in his recollection that he "didn't close it." In the absence of evidence to the contrary, the presumption is that he, through oversight, failed to perform this particular duty on the occasion in question.

The plaintiff's duties confined him to the office, and, while he may have known in a general way that there was a hatchway in the warehouse, he knew nothing about the location of the opening in respect to the head of the stairway. The warehouse contained paper stock liable to be damaged by water, and the plaintiff conceived it to be his duty under his general instructions to inspect the second floor.

The place was very dark, and the plaintiff had only the light of a flickering candle to guide his steps. He testified that he supposed everything was safe when he went in there, that he took every precaution, and that "the opening looked just like the floor itself."

In regard to the visibility of the opening, the son testified that:

"There was no way of discovering it. It was all in darkness, with the exception of the little light made by the candle, and that was only a little circle, and there was a very high wind blowing in the building."

With the view of reaching an amicable settlement with the defendant or their security company, the plaintiff, at the request of their attorney, made a sworn statement in which he said that in stepping backward he fell into the opening. We are satisfied, from the testimony of the father and his son given on the trial of this case, that the said statement was an honest mistake, due to a misconception of the facts.

The defense as set forth in the answer is:

(1) That the defendant was not guilty of negligence towards the plaintiff.

(2) That the plaintiff was guilty of contributory negligence.

1. This defense, so far as it is based on the proposition that the plaintiff acted beyond the scope of his instructions, or without instructions, is repelled by the evidence.

The instruction as actually given was broad enough to cover all the buildings.

Plaintiff was certainly injured by the negligence of the particular servant of defendant who was charged with the duty of closing the hatchway every evening. Plaintiff on the occasion in question was performing the entirely different duty of inspecting the warehouse for the purpose of discovering leaks. It is neither pleaded nor argued that the two were fellow servants under the laws and jurisprudence of the state of Louisiana. The common-law doctrine of fellow servants has been engrafted on the civil-law jurisprudence of this state to the extent of recognizing—

"only as fellow servants those persons who are engaged in a common work under a common employment." Weaver v. Goulden Logging Co., 116 La. 474, 40 South. 798; Evans v. Lumber Co., 111 La. 534, 35 South. 736; Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497

In Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475, this principle of juris-

prudence was reaffirmed, and the court, inter alia, said:

"In the case at bar there was no coassociation between the plaintiff and the watchman, their duties being entirely distinct.

"Article 2320 of the Revised Civil Code declares that 'masters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed.' By jurisprudence it has been established that this doctrine does not apply to fellow servants; but, with this exception, the plain letter of the law holds the master answerable for the act of his servants. The case before us does not fall within the exception."

In that case an assistant of the sawyer in a sawmill was injured by the negligent act of a watchman.

For the reasons stated, the defendant is clearly answerable for the negligent omission of its other servant to close the trapdoors of the hatchway.

2. The question of contributory negligence was primarily for the jury to determine under all the facts and circumstances of the case, and their verdict was approved by the trial judge. Our examination of the record does not impel us to reach a different conclusion. Under the evidence the danger was not obvious.

We are asked to increase the quantum of damages, but must decline to do so, as the amount of the award is not manifestly inadequate.

Judgment affirmed.