Statement of the Case.
NICHOLLS, J,
Plaintiffs are the heirs of Marie Williams, and seek to recover from the defendant company $30,000 and interest as damages for her death which they claim was the result of its fault. They alleged that the Union Ferry Company, a corporation duly organized, having a domicile and doing business in the city of New Orleans, is justly and truly indebted unto petitioners in the full sum of $30,000 for this, to wit:
That the said Union Ferry Company owns, conducts, and operates what is known as the “Third District Ferry” of the city of New Orleans, and that said defendant company did own and conduct and operate on the night of February 4, 1909, the said ferry boats, landing, and the approaches used in connection therewith, and particularly the ferry boat Hattie, and the landing pontoon bridge and the approaches at the head of Oliver street, in the Fifth district of the city of New Orleans, or what is commonly known as Algiers, receiving passengers at that point, accepting ferriage, and agreeing to transport and deliver them without injury to the head of Barracks street in the Third district of this city; that on the night above set forth petitioners’ mother, the late widow. Mana Williams, while returning home in the third district of this city after having attended church in Algiers, was drowned; that her death was due to the gross carelessness, negligence, and want of skill of the defendant company and its employes; that after having paid her fare in the ferry house of the Algiers landing she descended the walk or approach to a floating pontoon or landing, which landing is inclosed in a fence constructed and maintained by the defendant company for the purpose of protecting its patrons, in which said fence is placed a gate, and when said gate is open it indicates that it is safe for passengers to embark on the ferry from the pontoon or landing; the open gate further shows that the ferry is properly landed, and that it is without danger for passengers-to board same; that on the night above set forth when petitioners’ mother had reached the aforedescribed pontoon, finding the ferry at the landing and the gate on the pontoon 'opened, inviting her to embark on the ferry Hattie, giving her assurance of her safety to do so, and indicating that it was without danger; that on the evening of the accident it was very inclement, and the rain was pouring down in torrents, requiring of the defendant company an exercise of unusual care and caution in the handling and conduct of its ferry and landing, all of which it failed to do, not even carrying out its own regulations for the safety of its patrons as it was customary to do, but with utter disregard of its duty, and through gross and criminal negligence of its servants and employes in charge of the ferry and landing, the said defendant allowed the forepart of the bow of the ferry to swing out, thereby opening a space between the landing and the ferry itself, and when petitioners’ mother attempted to board she was precipitated into the river; that acting under the invitation of the *505 opened gate, giving her assurance of lier safety to board the ferry, she attempted to Step on the said ferry 'boat, when she walked into the intervening space, and was as already stated precipitated into the river; that the bow of the said ferry continued to swing out further, and after a short interval the signal was given to go ahead, the rear line was unloosed, and the ferry proceeded on its trip across the river regardless of the fact that petitioners’ mother was floating on the top of the water, her skirt acting as a float, and that she remained in that position for a period of some 10 minutes; that the ■drowning woman called and begged for assistance at the top of her voice, and although the defendant’s employes stood directly on the edge of the ferry, and within hearing •distance of the drowning woman, he made no effort to render any assistance of any kind whatsoever, not even throwing to her the rope that he had in his hand at the time; that certain passengers, Paul Vidivovich and Zi. Christinsen by name, seeing the terrible position of the woman, jumped back from the ferry to the landing or pontoon, and made every effort to rescue her from her perilous position, and would have probably ■succeeded in doing so had it not been for the fact that after petitioners’ mother had fallen overboard the ferry was signaled to go ahead and did go ahead, creating an eddy or current, which carried her out in the river and beyond the reach of the passengers, who jumped back on the landing, and who were making every effort to rescue her; that the company’s employé was within a few feet of the engine room, and could have easily called to or signaled the engineer to stop the boat, but due to his unskillfulness, gross and criminal negligence, and want of care, he made no effort either to stop the ferry or to aid and assist the passengers that were attempting to rescue her, although the passengers who had jumped from the ferry to the pontoon were begging and insisting on the company’s employes and servants to throw out a rope or float of some kind to aid and assist the drowning woman; that the death of petitioners’ mother was due entirely to the gross negligence, carelessness, and want of skill of the defendant company and its servants in allowing the gate to remain open after the ferry had partly left the landing, and also to the fact that the employé whose duty it was to close the gate was absent from his post and failed to perform his duties; that the said employé, Leon le Opeo by name, stated shortly after the accident to the passengers and police that he had forgotten to close the gate, and admitted his gross and criminal negligence, want of care, and disregard of the safety of human life; that petitioners’ mother’s death was also due to gross negligence, want of care and caution, on the part of the defendant in allowing a simple-minded youth, whose name is presently unknown to petitioners, too young and inexperienced to operate its ferry in the absence of its regular employé who failed to perform his duties; that petitioners’ mother’s death was not only due to the fact that defendant’s servants failed to close the gate on the pontoon, the same being open, and inviting her to board the ferry, but also in allowing incompetent, unskilled, unreliable, and too youthful employes to perform the duties of those regularly assigned for this work; that the defendant company could have prevented the injury and death of petitioners’ mother by closing the gate, and subsequently thereto, by an average care and diligence, when she had fallen in the river, and which it is its duty so to do. Petitioners claim $5,000 for the suffering of their mother, and $25,-000 for petitioners’ loss of her comfort, society, and motherly affection; that previous to the negligent drowning of petitioners’ mother she was in good health, and had the usual life expectancy. Your further named *507 petitioner, Eloise Williams, • wife of Optilus Sanders, asks that she be authorized to file this suit and to stand in judgment herein.
In view of the premises petitioners pray that the said Union Eerry Company, through its proper officer, be cited to appear and answer this petition, and, after due proceedings had, be condemned to pay petitioners the full sum of $30,000, with interest from date of judgment, and for costs and for all general relief. Your fourthly named petitioner prays that she be authorized to file this suit and to stand in judgment herein.
Defendant answered. After pleading a general denial it averred that if plaintiffs’ mother met her death as alleged she did so through no fault of respondent, its servants, agents, or employes, but that she met her death 'by drowning through her own fault, carelessness, and negligence in attempting to board the ferry boat, which was then under way and moving, at a time and place and in the manner and under circumstances when it was imprudent for her to do so.
Further answering, respondent averred that if it be shown that respondent was in any way negligent, and that the drowned woman was plaintiffs’ mother, her actions contributed to the cause of her death and bar any recovery against respondent. In view of the premises .respondent prays to be hence dismissed, with costs.
The case was tried before a jury, which returned a verdict in favor. of the defendant. Judgment was rendered accordingly, and plaintiffs have appealed.
Opinion.
The plaintiffs invoke in this case the application of the rule announced in 19 Cyc. p. 511, and Dougherty v. N. Y. Central (Sup.) 86 N. Y. Supp. 746, that, where a company operating a ferry boat moors its boat and keeps open the gate it thereby invites a passenger and gives assurance that it is safe to do so.
They also urge that a passenger is justified in assuming that, when the guard rails are taken down or the place opened for passengers to pass off, the boat will remain securely fastened; he may also assume that the landing place is in a safe condition, and need not examine particularly to see if there is a vacant place between the bridge and the boat. 19 Cyc. 508; Spiro v. Long Island Co., 21 Misc. Rep. 683, 47 N. Y. Supp. 1093; St. John v. MacDonald, 14 Can. Sup. Ct. R. 1; Palmer v. N. J. R. Co., 33 N. J. Law, 90.
They maintain that, reduced to its simplest form, the rule may be stated to he that the-carrier is bound to exercise the strictest diligence in receiving a passenger, conveying him to his destination, and setting him down safely, as the means of conveyance and the circumstances of the cases will permit. Le Blanc v. Sweet, 107 La. 368, 31 South. 766, 90 Am. St. Rep. 303 ; 5 Am. & Eng. Ency. of Law (2d Ed.) p. 538; Lehman v. R. R. Co., 37 La. Ann. 707; Turner v. R. R. Co., 37 La. Ann. 648, 53 Am. Rep. 514.
They refer the court to Patton v. Pickles, 50 La. Ann. 857, 24 South, 290; Julien v. Wade Hampton, 27 La. Ann. 377; Railroad Co. v. Anderson, 94 Pa. 351, 39 Am. Rep. 787; Ency. Plead. & Prac. 399; Aiken v. So. Pac. Co., 104 La. 161, 29 South. 1.
The evidence shows that on February 14, 1909, at 8 o’clock in the evening the steam ferry boat Hattie, belonging to and operated by the defendant company was at her landing in Algiers, moored fore and aft receiving passengers for the last trip which she was to make for the day, to the foot of Barracks street in the city proper.
The evening was dark, and the rain was falling. The usual hour for leaving having been reached, the boat gave its customary signals to warn all would-be passengers. The steam whistle had been blown, and the boat’s *509 bell rung. The boat was lying as usual at the pontoon wharf with her head downstream, because of the strong eddy existing at that point. The customary signals of departure had also been given to the boats’s employes. The front line was thrown off from the earil by a deck hand. The boat got under way. The bow was swung into the stream away from the pontoon until the boat was at an angle from the pontoon of about 70 degrees with the pontoon landing and the bank of the river, the bow being about 75 feet out in the stream.
The boat had backed up with her engines, and the stern line had been somewhat slackened to aid in making the swing. The stern end of the boat was about 3 feet from the pontoon.
It was usual after the signals for departure had been given for the clerk of(the boat before leaving to shut a gate, separating the gangway down which passengers had to pass from the ferry house to the pontoon below, and, having done so, to immediately throw a bar across the opening in the boat’s rails, by means of which entrance to it was effected.
On this particular evening the gate having been injured in some manner it was not shut, but the entrance on the boat was closed as usual by a bar. The departure of the boat on this particular evening conformed in every respect to the usual method of departure, with the simple exception that the gate at the end of the gangway was left open.
While things were in this situation, the plaintiffs’ mother, returning from church in Algiers to the main city, entered the ferry house, paid her fare and passed down .the gangway. She ra,n down the gangway through the open gate onto the pontoon bridge. She did not attempt to reach the boat by moving forward on the pontoon directly opposite. Instead of doing this she turned to the left when she had passed the gate, and ran towards the stern of the boat, the latter being still a few feet from the pontoon. When she entered the ferry house she realized that she was late, and hoped by hurrying forward to be able to get on board the boat. When she reached the gate she saw that it was impossible to do so at the usual place for entering upon it, as the boat at that point was far off in the stream. The lamps along the gangway and the electric lights upon the boat disclosed the exact situation.
She assumed the risk of jumping onto the boat at its stern end where the intervening space between it and the pontoon was shorter, and in the attempt fell into the river and was drowned.
Accidents of this kind to passengers when reaching ferries after the boat has left its moorings are not unusual, but it cannot be reasonably claimed that the ferry company should be held responsible for the results of the public’s own recklessness or want of ordinary prudence.
We can readily conceive of a case where it should be responsible for leaving open a gate at the end of a gangway down which passengers have to pass to enter a boat. It should be, where the attendant circumstances are such as to lull the approaching passengers into false security and mislead them by the reasonable belief that the boat was still tied to her usual landing place. The testimony in this case does not show facts of that character ; on the contrary, it discloses a state of affairs which would make injuries that .a person has received himself from his own rash conduct, to be suffered and paid for not by himself but by . another person, who had not in any way brought them about.
The defendant should have closed the gate leading out from the gangway on the pontoon before the boat swung into the stream, but that fact was not the proximate cause of the woman’s death. .That was due to her want of ordinary caution and prudence in regard to her own safety. For the result of *511 her dangerous attempt to jump upon the boat at an unusual, unwarranted, and unauthorized place, her heirs must legally bear the consequences. Tatum v. Rock Island R. Co., 124 La. 921, 50 South. 796; Taylor v. Palmer & Co., 124 La. 531, 50 South. 522; Railroad Co. v. Jones, 95 U. S. 441, 24 L. Ed. 506; Summers v. R. R. Co., 34 La. Ann. 144, 44 Am. Rep. 419; Childs v. R. Co., 33 La. Ann. 156; Wood, Railway Law, 1155; Knight v. R. R. Co., 23 La. Ann. 462; Phillips v. Railroad, 49 N. Y. 177; Railroad v. Scates, 90 Ill. 536.
The judgment appealed from is'not erroneous. It is hereby affirmed.