BREAUX, C. J.
The son of plaintiff, a minor, 16 years of age, was killed by a falling tree. Plaintiff charges the fall of the tree to the negligence of defendant, and asks judgment for the sum of $20,000.
Plaintiff’s son worked for defendant on a railroad of the Lutcher-Moore Company, of which defendant had charge as an independent contractor.
We are informed by the record and argument that plaintiff’s son was repairing the defendant’s roadbed with other boys, known as the “Shim Gang,” under Foreman Jacobs.
Another gang was known as the “Steel Gang,” of which Hatch was the foreman, also employed in railroad repairing, and Beasley Coekem was superintendent of the swamp.
The defendant was engaged in placing derailed cars on the track. He successfully had had one of the cars re-railed. The cable used and the tree to which it was attached in pulling the ear up the embankment and re-railing the car were amply strong enough. The first car was made fast to a gum tree through a block. In re-railing the second car, the rope used in pulling it was passed through a pulley fastened to a túpelo gum tree. The first, it is said by plaintiff, was a sound tree with firm fiber; the second was not sound, and was a weak-fibered tree; besides it is stated by plaintiff that it was a decayed tree.
This much is stated in regard to the tree; its bearing upon the issues will be considered in deciding them.
No one disputes that defendant was repairing the roadbed in a cypress swamp; that the laboring force was divided into two working parties; that one was in charge of one foreman, and the other working party in charge of another foreman.
*901 Honoré Baptiste, the boy who was killed, had worked at times for about a year. The contention is that Honoré was one of the last party, that is, one of the Hatch gang, and that its foreman ordered him to help in re-railing the car; that it was the first time that any one of this party had worked at re-railing cars in the manner followed on this occasion; that the tree to which the foreman rigged, or rather fastened, the cable was not inspected by the foreman; that it was not a fit tree to bear the pressure.
That when everything was ready the locomotive to which one end of the cable was attached, in accordance with the foreman’s order, began to move; that the cable was thereby made tight; that the tree, to which another end of the cable was attached, as it was unsound, was pulled down, and, while it was falling, as the workmen were frightened, they ran away from the immediate place, except the foreman, who ran to the place of danger; that Honoré and another workman, the former following the latter, ran in the same direction as the foreman, who, none the less, escaped, also the workman; that the latter was injured by a falling limb; that Honoré was knocked down, and from the effects of the blow received died in a few hours.
Plaintiff charges that the foreman failed to show the attention which should have been shown to the injured boy.
The allegations of the petition are not entirely similar to the facts noted above. They are as follows: That the employés, including Baptiste, were ordered by the foreman to hold the cable tight, and to take their position near the gum tree and loosen when ordered; that, while the laborers held the cable under the tree, the locomotive moved in accordance with the order of the foreman; that the tree fell.
The defendant seeks to meet plaintiff’s complaint by urging that the evidence adduced does not conform with the averments also by urging that the deceased was not assisting in replacing, the derailed car; that he formed part of another working party, and was waiting until the removal of the derailed ear before beginning with his part of the work.
In order to arrive at a conclusion in regard to the disputed facts, we have had to follow as closely as we could the pages of the testimony upon the subject.
We annex to our oi>inion a sketch, said in the testimony to be “roughly drawn and not exact in dimensions,” but approximately correct. A, the capsized car; B, the túpelo gum tree; C, the locomotive; D, a pile of trash; E, the track; E, the cable attached to the tree in question through a snatch box; and G, the gum tree.
There is a difference between the theory that plaintiff must have had when his petition was written from the theory advanced in the brief.
It is not as great as defendant urged.
[1] The son of plaintiff was not a regular workman in handling derailed cars. He did lend a helping hand, and was not considered out of his place as a workman if he added his strength in pulling a rope, or in doing anything else needed in performing the work, although not one of the regular working gang, upon whom it devolved to put things in order to re-rail a car. This disposes of defendant’s ground that, in being present or in aiding in the work, plaintiff’s son was doing that which he should not have done.
In another respect, plaintiff erred in alleging that his son was regularly at work, on the day he was killed, holding the cable in accordance with orders given at the moment before the locomotive, to which the cable was attached, moved and began to pull the ca: *903 We tied to' the car it was the purpose to raise and re-rail. He had naught to do with that part of the work.
We have noted that the train extended its operation some distance in the woods. Two of the cars having derailed, it was necessary to pull them back in position in the way usually followed. The tree selected had the appearance of being sound. Two of the witnesses testified that the stress upon the tree was too great, as it was at about 50 feet from the track.
There is nothing to lead to the inference that another tree might have been selected.
[2] After everything had been prepared, the laborers were ordered to take their positions out of danger; to which they repaired. They would not have been hurt at all, had they remained where they were. Two became very much frightened, and, instead of running from the falling tree, ran toward the tree, and one was killed.
' The master owes it to his employés to maintain safe premises. He is bound to exercise necessary precaution. Where there is danger, if he warns them of the danger, and informs them where to place themselves to avoid it, and they follow directions, if the danger causes unusual fright, and they move away and are hurt, another principle arises, which we have to consider.
The master is liable for damages occasioned by the fear created by his neglect, if it results in harm to the one frightened.
The decisions hold, in substance, that the sudden impulse of fear in consequence of a sudden appearance of danger, caused by the negligence of the one sued, may render the latter liable in damages. Lehman v. Railroad Co., 37 La. Ann. 705; Holzab v. Railroad Co., 38 La. Ann. 187, 58 Am. Rep. 177; Thompson on Negligence (2d Ed.) vol. 1, par. 197.
This is a case of surprise and the uncontrollable impulse created.
Here all párties were timely warned, and there were a number of superintendents, foremen, and others, who gave required warning. It is stated that one of the number of those in charge ran; those more specially in charge remained where they were; they warned all the men to remain. The running away of this one does not seem to have been taken seriously at the time.
[3] Another ground for damages is urged. It is that the boy was not properly taken care of after the accident.
No question but that the master is liable who neglects, his employe, immediately after the accident, in failing to send for medical assistance, and in having him taken care of for the time being.
In the case cited by plaintiff, North Central R. R. Co. v. State, 29 Md. 420, 96 Am. Dec. 545, there was unpardonable neglect and absolute indifference to the employs, which was the cause of suffering and cruel hardship.
The present is not a similar case. It was not one of absolute indifference and neglect.
The judge of the district court saw and heard the witnesses. He did not think that plaintiff should be allowed damages.
We have not found that he has erred.
For reasons stated, the judgment is affirmed.