The opinion of the court was delivered by
Breaux, J.
The plaintiff sues for the recovery of damages sustained by the death of his son caused by the explosion of a boiler.
The defendant admits that Frederick Mattise, the son of plaintiff, was killed by an explosion of a boiler owned by the company.
The defence is a denial of all liability, and that it, or its employés, were guilty of negligence; and it further alleges that if there was negligence, its employés were the fellow servants of the defendant.
In a supplemental answer, the defendant sets up and avers that plaintiff proposed,'if the defendant would pay the funeral'charges he would accept the payment in full settlement of all claims that he might have for damages.
The court a qua decided that the plaintiff is not entitled to recover on his own account for loss of support, as the relations between himself and his son had not been of a character to justify the belief that he would have looked to or received from him any relief or support, had he lived.
Upon the other ground, as exercising the action of his son, which survived in his favor, he was allowed the sum of two thousand five hundred dollars.
*1537 The following are the facts as we summarize them:
The boilers were iron boilers.
In the afternoon of 25th of June, 1892, the fireman informed the engineer in charge that a “ bag ” had formed on the boiler.
The chief engineer testifies that he ordered this fireman to put out the fires and put the boiler out of service.
He also states that the boiler had “bagged” previously; upon notification he gave it a critical examination and put it into service for inspection; that it is customary whenever a boiler “bags” to put out the fire; to have it examined and the “bag” driven up or cut out and a new sheet put in. A bag in the boiler is formed by sediment settling onthe inside, which prevents the water from touching the shell; the result is the boiler expands wherever the sediment settles, and the entire thickness of the sheet is forced out by the inward pressure. The weight of the evidence is that a “ bag ” in a boiler should never be neglected, as neglect may be attended with serious accident; that the fire should be immediately taken out and the boiler disconnected. About three hours after the fireman had reported to the engineer and superintendent in charge that there was a “ bag ” in the boiler, the explosion occurred and killed the son of plaintiff, who was a coal passer at the boilers. The evidence does not disclose that the fireman complied with the order and that the boiler was “cut off” or separated from the battery of boilers of which it formed part by closing the connecting valves and putting out the fire.
The chief engineer, Smith, superintended and directed the ammonia department of the plant and had charge of the whole factory. He had the authority to employ and discharge the fireman and other employes.
The deceased was his subordinate under his immediate direction,, by whom he had been employed and might be discharged.
The president of the company testifies that a superintendent of the defendant’s ammonia engine and boiler was succeeded by this engineer, who was promoted from the position of second to that of chief engineer.
As to the defendant’s payment of the funeral expenses the president, as a witness, says' that an aunt of the decedent called on him and said the plaintiff was in Covington and asked him if he would pay the funeral expenses, and that if he did they would requre noth *1538 ing more. The company did defray the expenses of the funeral. The testimony does not establish that any agreement was entered into of compromise regarding damages.
We will discuss the issues raised in the order in which we have ■stated the facts of the case.
THE NEGLIGENCE CHARGED.
It is evident that had the steam been “cut off” by closing the valves and thereby separating the boiler that exploded from the ■other five of the battery, the explosion would not have taken place.
After those hours a boiler out of service will nob explode.
There is evidence tracing the explosion to the “ bag.” A witness, a boiler maker, whose testimony is not contradicted on that point, was satisfied that the “ bag” was the cause.
The negligence in not extinguishing the fire and disconnecting the steam is not less because an unexecuted order is said to have been given to the fireman. Empty orders will not suffice.
It was the duty of the engineer, as he had done on previous occasions, to examine the boilers and exert due precaution against an accident.
It was not shown that the engineer’s authority, which was really .that of a superintendent, was at all felt.
He controlled the labor, or at any rate it devolved upon him to control the labor in the departments under his charge (in fact of the whole plant).
The judge of the District Court, who heard the witnesses, says:
“A ‘ bag,’ that is to say a local distention, took place in one of the boilers and about three hours later the boiler exploded.
“ That Smith, the engineer in charge, was informed of the ‘ bag ’ at the time that it appeared and had ample opportunity to have had the boiler cut out, that is to say disconnected from the other boilers and relieved of steam, a -d to have had the fires drawn from under it, and that it was his duby after having been informed of the ‘ bag ’ to have immediately taken tho--e measures of precaution.
“ That whilst said Smith claims to have given orders to Fricke the fireman to extinguish the fire and pub the boilers in question out of service, it does not appear that he saw that his orders were executed, or as a matter of fact that said orders were executed, bub it appears on the contrary that the boiler which exploded three hours after the *1539 ‘ bag ’ was the boiler in which the ‘ bagging ’ had taken place, and my conclusions not only from direct testimony to that effect, but from evidence as to the nature of a 1 bag ’ and as to the surrounding circumstances is that the ‘ bag ’ in question was the point from which the break in the boiler began when the explosion took place and that said ‘bag’ was the immediate cause of the explosion.”
THE DECEDENT AND THE CHIEF ENGINEER IN CHARGE OF THE FACTORY WERE NOT FELLOW SERVANTS.
The defendant’s second ground is urged in the alternative; that is, if there was any negligence the employés were the fellow servants of the decedent and that the company can not be held liable therefor.
Distinction may well be made in case of corporations from that of individuals. Corporations must necessarily act through agents, who may be regarded as the representative of the corporation when acting within the scope of their authority. •
It must be borne in mind that the decedent was performing his duty as a servant under the direction of a superior; it was incumbent upon him to obey. It was not right in the agent to render the service dangerous by his negligence. The employé had a right to assume that his superior would exercise proper care.
The company had given to the employer of the decedent ample authority.
He states as a witness, and his statement is not contradicted: “ The company gave me full power to act and I used every precaution to prevent accident.”
Having been placed in this position of trust he may fairly be considered as the representative of the corporation in operating the factory and in all acts needful to the protection of the company’s •servants.
In superintending the coal passer’s work and that of the fireman, he was not their fellow servant.
Thus authorized he was bound to exert such intelligence, skill and experience as is to be required from one to whom the safety of others is intrusted. Darrigan vs. New York & New Eng. R. R. Co., 52 Conn. 305.
This court has adopted the decision of C., M. & St. P. R. R. Co. vs. Ross, 112 U. S. 377, in which the doctrine Is announced “ that a conductor having the entire control and management of a railway *1540 train occupies a very different position from the brakeman, the porters, and other subordinates employed. He is, in fact, and should be treated as the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and just one, and it will ensure more care in the selection of such agents, and thus give greater security to the servants engaged under him in an employment requiring the utmost vigilance on their part and prompt and unhesitating obedience to his orders.”
In that case the court also holds that “ whenever a train or engine is run without a conductor, the engineman thereof will also be regarded as conductor, and will act accordingly. The argument is a short one. The conductor of a train represents the company, and is not a fellow servant with his subordinates on the train.”
When applied to the case at bar, we find analogy in that the engineer had charge of the ice factory, and that the fireman had charge of the boilers and the pumps in the boiler room, and that he was under the direction and superintendence of the chief engineer, who-represented the company in operating the factory.
It is not the mere fact that the chief engineer had control over the fireman and the coal passer that destroys the relation of fellow servants, between him and the servants, but the additional fact that he succeeded the superintendent and vice principal, George Smith; that he had full authority to provide for the safety of the servants and had the management of the factory, and in view of the further fact that it is the duty of the master to supply machinery and tools and to see to their repair, and that they are kept in good repair.
When it was discovered that the boiler was out of repair and out of condition, it became the duty of the master, and in his absence of the vice principal, the chief engineer in charge of the factory, to-attend to its repair and restore it to a safe condition.
The case from which we have quoted was cited with approval in 112 U. S. 377, in Towns vs. Railroad Company, 37 An. 630.
In Van Amburg vs. R. R. Co., id., p. 655, this court said: “The defence that no recovery can be had because, even admitting that the fault lies with the conductor, his act was that of a fellow servant, is no longer tenable to the extent formerly admitted. * * * The case 112 U. S. 377, has made an inroad on jurisprudence in the right direction.”
*1541 Our examination of the authorities enables us, we think, to quote the following as a correct statement by Bailey in his work entitled “ Master’s Liability for Injuries to Servants,” without consulting this court to the full extent of the principles of the decision to which allusion is made:
“ In the Federal courts, the courts of New York, Wisconsin, Maine and many others, the doctrine is that the master is personally present all the time, even in the performance of actual labor; while in Massachusetts and some other States the extreme is not held in the case of corporations, but rather when the master has used due care in the first instance, and provided suitable and reasonably safe appliances, and provided suitable means for keeping and maintaining them in proper repair and employed competent servants to see that the means were properly used, it had fulfilled its duty.”
We hold to the rule laid down by the first courts referred to, that is the Federal and other courts, to this extent only.
That the knowledge of the vice principal, who is present, that machinery was dangerously defective is the knowledge of the principal.
The one in charge of a factory should be bound to guard against threatening accidents.
Business enterprises extend beyond a continent and at great distances from the domicile of the owners securely managed by faithful agents and skilled men. Their knowledge that the use of machinery is unsafe is notice to the owner.'
THERE WAS NO COMPROMISE FOR ANY CLAIM FOR DAMAGES.
Finally the defence urges:
If there was negligence, that the company’s payment of the funeral expenses was accepted by the plaintiff in satisfaction for all claims.
The conversation by the father of the deceased and the president of the company falls far short of a compromise or of any understanding respecting any claim for damages.
There was nothing said regarding the accident and damages.
The testimony of other witnesses does not establish an abandonment of any claim, so as to bind the father and plaintiff.
He may have expressed himself as satisfied with the company’s generosity in paying the expenses; his utterances have not the effect *1542 of preventing him from recovering a right in regard to which it does not seem he knew anything.
The fact that the company paid the funeral expenses of its late servant reflects to its credit and should not prejudice the rights of plaintiff or defendant.
DAMAGES.
As to the quantum, of damages, the plaintiff is only entitled to such damages as the deceased himself could have recovered at the moment when he died; that is, compensation for the suffering he endured.
It is not possible to determine with great precision the amount of damages that should be allowed for such suffering.
In the case of Poirier vs. Carroll, 35 An. 699, they were limited to twenty-five hundred dollars. The deceased had suffered about twenty-four hours.
In Van Amburg vs. R. R. Co., 37 An. 655, the court said: “The death was immediate if not instantaneous. No arithmetical calculation can compute the intensity of that agony that overwhelms the victim of such an accident when he confronts death, but a sum has been adopted and its apportionment is not determined by fixed rules.”
The judgment of the District Court was reduced to eighteen hundred dollars.
In the case of Towns vs. R. R. Co., 37 An. 636, the sufferings were endured about four hours before death; the amount of one thousand dollars was allowed as damages.
In this case the sufferings were about twelve hours.
We think the amount allowed should be reduced to one thousand dollars.
It is therefore ordered that the judgment appealed from be amended by reducing the same to one thousand dollars and legal interest from the date of the judgment of the District Court, and that as amended the same be affirmed, appellee paying the costs of appeal.
Rehearing refused.