BREAUX, J.
This is an action for damages of $7,000 for personal injuries at a sawmill. The case was tried by the judge without a jury. The defendant was condemned to pay the sum of $2,500.
Plaintiff filed an answer to the appeal, and asked for an amendment of the judgment by-allowing an increase to the sum which he claims in his petition.
Statement of the Pleadings.
Plaintiff, in his petition, charges that, owing to the negligence of defendant’s sawyer, for whose negligence defendant is liable in damages, he suffered injury entitling him to the damages he claims.
He avers, in substance, that he was working for defendant as an extra and emergency hand; that he was placed at a work which was dangerous; that he was not warned, of the danger by the foreman in charge of the mill, or by any one else.
He charges that the sawyer was addicted to excessive drink—a fact known to the foreman—and that defendant should not have kept him in its employ. Plaintiff states the character and extent of the injury received and details the different amounts of damages claimed.
Defendant filed a peremptory exception on the ground that plaintiff’s petition disclosed no cause of action, and in its answer denied all liability, and charged that, if injuries were sustained by plaintiff, it was because of plaintiff’s negligence and want of proper care for his own safety.
Of the Facts.
Plaintiff, as a witness, states that he was called away from his usual work at the mill, and transferred to the log carrier; that he was not accustomed to the work; and that while he was on the carriage the sawyer directed him to take out some bark that was behind the rear block, which he did, and while doing this he noticed that there was bark also behind the rear or third block of the carrier; that he held up his hand to the sawyer as a signal to him not to go on, but that the sawyer, instead of heeding his signal, whilst he (plaintiff) was stooping down to take hold of the bark which was between the log and the carriage’ block, pulled the lever, started the saw “nigger” to turn the log, and that in turning the log struck his hand and wrist, greatly injuring him.
*537 To enter further into details, the testimony shows that at the time of the accident the sawyer applied the steam, and with the lever moved the “nigger” onto this log, which was on the carrier, to turn it over, just at the moment that plaintiff was holding onto an appliance on the carriage, which witnesses name the “dog,” with one hand, and reaching after the bark with the other; and at that moment the log forced by the nigger against the carriage blocks caught plaintiff’s hand and greatly bruised it. The hand was caught between this log, which was' violently turned by the nigger, and the upper piece of the block.
With reference to plaintiff’s signaling the sawyer all witnesses agree that when plaintiff went to the middle block on the carriage he held up his hand, but there is difference in statement of witnesses about waving the hand and signaling the sawyer at the rear block, when plaintiff undertook to clear the block just prior to the accident. Plaintiff swears that he did give the usual signal. One of defendant’s witnesses was under the impression that he did not wave his hand to the sawyer; another swears that plaintiff did not give the signal when it is desired that the carriage remain still.
Regarding the danger of the employment urged by plaintiff, defendant’s log scaler, who had 12 years’ experience as a workman in sawmills, as a witness for defendant testified that there is danger incident to the work on a sawmill log carriage, and that he advised the foreman of the mill a few days before the accident happened not to employ him (plaintiff) on the log deck, for he feared that he would get hurt, because plaintiff was slow and awkward in his movements while at work. There was testimony introduced to prove that the sawyer, as alleged, used intoxicants freely; but this testimony did not prove that he used these to excess while at work.
One of the witnesses testified that the sawyer was a little reckless, jerked his carriage around, and would at times become angry. Others gave Mm a character for patience and amiability.
One of the issues urged by plaintiff was that he was in plain open view of the sawyer, within 20 feet of him, and that the sawyer should have seen him while at work. Defendant’s contention, as relates to the issue, is that the danger, whatever it was, was apparent; and that it was as much of the duty of plaintiff to see the sawyer as it was for 'the sawyer to see the plaintiff.
The testimony shows that plaintiff’s hand, wrist, and forearm were severely and seriously injured, and that he was permanently injured, and suffered excruciating pain.
Opinion.
We have no difficulty in arriving at the conclusion that the sawyer was hasty and imprudent in turning on the steam and putting the “nigger” appliance in motion at the time he did. We infer from the testimony that the sawyer, above all others in the operation of saw mills, should be prudent and alert. Instead, at the moment that plaintiff was leaning over, made necessary by the work in which he was employed (removing the bark), he was violently struck. The negligence charged is fully made out against the sawyer, and on this point we will add that the servant had the right to presume that the sawyer would give all proper attention to his safety, and that he would not carelessly or needlessly expose him to risk by recklessly turning the log at the particular time that he was at work as before mentioned. But defendant’s contention is that it is the plainest possible case of injury (if injury was committed) by a fellow servant; that the sawyer was the carriageman’s fellow servant. We have not found it possible to arrive at the same conclusion. The “dogger,” as sometimes called, or carriageman, is in a position secondary to the sawyer, who directs and conducts the machinery and appliances about his saw.
' Plaintiff has judicially admitted that defendant’s mill was in charge of a foreman, under whose direction he was working on the day he was injured.
Defendant says that by reason of the fact that the foreman was in charge the sawyer must have been the fellow servant of the “dogger” or carriageman. As we take it, the foreman had charge of the whole mill, while the sawyer had charge of his own department.
Plaintiff charges in his petition that both *539 were negligent—the foreman and the sawyer —and details with some particularity in what respect each was negligent.
We take it that the concurrent negligence of each is sufficiently alleged. Now, whether the plaintiff was the fellow servant of the sawyer presents a question not free from difficulty under the pleadings as made up and the facts of the cause.
This court held in Dobson v. Railroad Co., 52 La. Ann. 1127, 27 South. 670, that a defendant company was liable for damages to a foreman of a gang of laborers who was injured by the negligence of the conductor of the train. We think the defendant company is liable for damages to a “dogger” on the carriage, who was injured by the negligence of the sawyer of the mill.
In Mattise v. Ice Company, 46 La. Ann. 1535, 16 South. 400, 49 Am. St. Rep. 356, the cmployé was a subordinate of the engineer. He had the authority to employ and discharge those under him. The court held that the “coal passer” was not the fellow servant of this engineer. We here hold the mere “dogger” is not the fellow servant of the skilled laborer, the sawyer.
In Towns v. R. R. Co., 37 La. Ann. 632, 55 Am. Rep. 508—a well-considered case, and which, by its thorough reasoning, recommends itself to the court—it was said, after having referred to the Ross Case, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787:
“And here the Supreme Court of the United States has, in a very recent decision, placed a very important limitation upon it by holding that the conductor of a train, who has the right to command and control the train and the employes, does not bear the relation of fellow servant to the latter, and that the company is responsible to them for injuries resulting from his neglect of duty.”
This court added:
“No doubt this principle might receive extension to other relations between officers having the right to command and subordinates subject to such command.”
In another case this court said:
“The defense that no recovery can be had because, even admitting that the fault lies with the conductor, his act was that of a follow servant, is no longer tenable. The case of Chicago, Milwaukee & St. Paul R. R. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, has made an inroad on jurisprudence in the right direction.” Van Amburg v. R. R. Co., 37 La. Ann. 654, 55 Am. Rep. 517.
The language of the decision from which we have just quoted we think would go to the extent of sustaining the view that the master is liable when the work in which he is employed requires that one of the employes shall have the direction and control of the servant placed under him, although he may not have the independent power (independent of the master’s authority) to employ and discharge.
Here plaintiff was performing a duty under the direction of the sawyer. The Civil Code provides:
“Masters and employers are answerable for the damages occasioned by their servante in the exercise of functions in which they are employed.” Civ. Code, art. 2320—thus limiting very much the scope given to the fellow-servant doctrine by a number of courts in other jurisdictions; not in all, however, it must be said.
In running its mill defendant intrusted the duty of working the saw, running the log carrier, and of applying the steam to the appliance and turning logs to the sawyer. Negligence of the sawyer, its servant in charge of a special duty, became the negligence of defendant.
Ordinarily, it is true, under the fellow-servant rule, it has been held that a master who uses due diligence in selecting competent men for his work, and furnishes them with proper machinery to perform the work, is not answerable where there is no express statute rendering him liable for the damage caused by another person in his employ and in the same service.
But at this point we had occasion to consult article 2320 of our Civil Code (1384 of the French Code). In our research in regard to the scope of the article we found that in one of the provinces of this continent, in interpreting similar articles, it was held that the fellow-servant rule is rejected by the French law, which governs the decision of such questions in the province of Quebec; and it is settled, that the rule of exempting master from liability to his servant for the negligence of a fellow servant is not in force in the province of Quebec.
*541 Note verbo “Fellow Servant,” Am. & Eng. Enc. of Law (2d Ed.) vol. 12, p. 901.
We understand that in the province of Quebec, article 1384 of the French law (2320 of ours) is the rule, and that in construing the rule the court in question under the civil law (different from the decisions of courts in other provinces of Canada, under the common law, by which they are governed) held that the fellow-servant idea is not sanctioned.
We read French commentators’ comments regarding the article of the French Code before cited, and the syllabi of decisions in Fuzier-Herman under that article, and did not find that it is otherwise in France.
We will not go to the extent of holding that the fellow-servant rule has no application whatsoever in Louisiana. We only state the facts as found elsewhere. We will, however, hold that under the article of the Civil Code, supra, an extreme position in regard to the fellow-servant rule cannot well be sustained. We think that the master can be held liable “even when the immediate negligence is that of a person who in some sense is the co-servant of the person injured.” Am. & Eng. Ency. of Law (2d Ed.) vol. 12, p. 909. That was the view expressed in the Stucke Case, 50 La. Ann. 172, 188, 23 South. 342.
Here plaintiff, as shown by the testimony, was not sufficiently active to perform the work to which lie had been assigned. There was testimony also regarding the unfitness of the sawyer. We presume that the district judge who heard these witnesses, inferred that the negligence of the sawyer had been such as to justify the conclusion that he was not as competent as witnesses for defendant seemed to think he was.
Defendant denies fault for assigning plaintiff to a dangerous employment without warning him of the attendant danger, and points to the fact sustained by the testimony that plaintiff had been engaged in the same work several times before the day of the accident; that he never at any time objected to the work; and that the dangers incident to the employment were open and apparent to any person therein engaged; and urged further that there were no dangers from such employment at this particular mill which were not incident to like employment in every sawmill. With reference to these different grounds urged by defendant, we can only say that it seems to us that the danger was not open and apparent, for the accident was due to the unexpected negligence of the sawyer. This danger was therefore special and local to one mill, and to one person in charge of a particular work, who used the lever too freely.
As relates to the asserted drinking habit of the sawyer, the testimony is conflicting regarding the measure of the indulgence. He was not a professional consumer of strong drink. If all the other grounds were as weak, we would not feel justified in arriving at the conclusion that the judgment should be affirmed. We have found no ground to increase the amount allowed by the district court.
The law and the evidence being with plaintiff, the judgment is affirmed.