We find no error in the judgment appealed from, and it is hereby affirmed.

---

(35 South. 497.)

No. 14,295.

MERRITT v. VICTORIA LUMBER CO.

(Dec. 15, 1903.)

INJURY TO SERVANT—FELLOW SERVANTS—NEGLIGENCE OF FOREMAN—DEFECTIVE MACHINERY.

1. When servants are engaged in different duties in the same establishment, an injury resulting to one by the carelessness or negligence of another, in the course of the latter's peculiar work, does not fall within the rule which exempts the master from liability by reason of a fellow servant's negligence.

2. To bring a case within the exemption (exemption of the master from liability) this material fact must appear, that the servants engaged, one of whom is injured or killed, must be men in the same common employment *and engaged in the same common work* under that common employment.

On Rehearing.

3. In this action, sounding in damages, the workman killed in the accident was in no way at fault.

4. The foreman knew that the one immediately in charge of the rip-saw, a dangerous machine, was indolent and careless, and therefore close supervision was the more necessary.

5. A piece or "guard" had been removed from this machine, and the accident happened thereafter about 12 hours. Careful inspection would have, it is reasonable to presume, enabled the master, or his representative, to discover that it had been removed.

6. The superintendent had the power to employ and discharge those under him.

7. The case does not fall under the "fellow-servant" rule.

8. The master was not relieved of all responsibility, for the want of supervision and inspection are traced to the foreman or representative.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Libbie Merritt against the Victoria Lumber Company. Judgment for plaintiff and defendant appeals. Affirmed.

Wise & Herndon and Alexander & Wilkinson, for appellant. Leonard, Randolph & Rendall, for appellee.

BLANCHARD, J. Plaintiff sues in her own right as surviving widow, and as natural tutrix of her minor children, claiming damages for the loss of the husband and father, who was killed at defendant's mill by a piece of timber violently thrown by a rip-saw.

She charges his death to defendant's fault and negligence in not providing (1) safe machinery and keeping it in safe condition; (2) in not operating the rip-saw so as to minimize the danger incident to its operation; (3) in employing careless and negligent operators.

The answer of the defendant is that plaintiff's husband's death was purely an accident, not caused by any defect of machinery, nor yet by the fault or negligence of any one in its employ; but if occasioned by the neglect of any of its employees they were fellow servants of plaintiff's husband, and for their negligence defendant is not liable.

The case was tried by jury whose verdict was in favor of the plaintiff, awarding her twenty-five hundred dollars in her own right, and the like sum to her minor children.

Defendant appeals.

*Ruling*—The work the deceased was employed to do at the mill was to keep the floor and passage-way of the workshop clear of trash or pieces of timber. It was his duty to gather up the stray and loose pieces of lumber that might be lying in disorder on the floor, keeping them out of the way of the machinery and of the workmen.

He was engaged in performing this duty when struck and killed by the piece of timber thrown by the rip-saw.

He had no connection with the operation of the saw itself, nor was his sphere of duty confined to the locality immediately at and around the saw.

The rip-saw was operated by two men, one called "the feeder," the other, "the off-bearer." They were, at the time of the casualty, handling pieces of timber two feet long by about five inches square. Out of these they were sawing or ripping smaller pieces for balustrades, two inches square by two feet long.

The rip-saw is a machine consisting of a cast iron table, thirty by forty-two inches, in the center of which, running in a slit, is a small circular saw.

The table is movable—it can be raised up or down. The saw is stationary. There are fitted to and on the surface of the table what are called "guides," to guide the timber as it is being put through the saw. Their object is to so adjust the timber and hold it to the saw that each piece sawed or ripped out of it is of the same width.

The saw fitted in the slit revolves towards "the feeder" with incredible swiftness and power.

The feeder stands in front of the machine and adjusting the timber to the guides and saw, pushes it against the saw. As the saw passes through it "the off-bearer's" duty is to take the pieces, throwing to one side the smaller piece intended for balustrade purposes, and returning the larger piece to "the feeder" to be again passed through the saw.

At the time the deceased met his death "the feeder" had so adjusted the movable table to the saw that the latter could cut the depth of only half of the stick of timber he was feeding to it. He had passed the piece once through the saw and it had been returned to him by "the off-bearer." "The feeder," turning it on the side, then passed it through the saw a second time. This severed from the larger piece one quarter of its size, or a piece (say) two inches thick by two feet long, intended to be worked up into a balustrade.

The position of the two pieces at the instant the saw emerged the second time was, the larger piece, now three quarters of its former size, was on top of the smaller piece two inches square.

It seems "the off-bearer" was slow to catch the pieces, and "the feeder," not yet having loosened his hold, himself drew back the larger piece and in doing so the smaller cube,

detached but still under the larger piece, was drawn against the teeth of the saw, was caught by the teeth and hurled with great velocity back towards the front of the machine where Stevens, the feeder, was standing.

Just at that moment Merritt, the deceased, was in a stooping position, discharging his duties, just back of the front of the machine, only a few feet from Stevens. The flying piece of timber grazed Stevens' arm and struck Merritt with full force on the side of the head at the temple, crushing his skull. After lingering a few hours he died, never recovering consciousness.

He was forty-three years of age. His wages at the time were a dollar a day. He left a widow and eight children, seven of whom were minors—the youngest two years old.

He owned little or nothing in the way of property. The family were supported by his earnings; were dependent on him.

It is shown that, according to life insurance tables, his expectancy of continued life was twenty-six years.

The contention of the plaintiff is that the machine, at the time her husband was killed, was dangerously defective in that it was without what is called a "guard," or "spreader"; that if this guard had been upon it and in place the accident could not have happened; that the object and purpose of this guard is to keep the pieces of timber, sawn through by the saw, from coming in contact with the teeth of the saw and hurled back, to the detriment of those standing at the front of the machine.

This guard consists of a small piece of steel fastened in the slit in which the saw revolves, and adjusted just behind the saw. It is placed as near the saw as can be without incurring the danger of the saw striking it.

Sometimes these guards come with the machine when purchased from the factory; sometimes they do not and are supplied (made) by the people who run the machine. They are safety devices.

It is shown that other rip-saws in defendant's establishment were fitted with guards, and that the one in question had a guard put on it, the day before Merritt was killed, by

the foreman of the shop, but the same had, the day of the casualty, been removed by Stevens, "the feeder" of the machine.

The contention of the defendant is that guards are not in general use on rip-saws; that a machine of that character is not defective because it is not supplied with one; that the factories manufacturing rip-saw machines do not fit them up with guards.

The evidence satisfied the jury, as it does us, that a rip-saw of the character of the one that killed Merritt, to be safe should be equipped with a guard, and that Merritt would not have been killed had there been a guard on the machine.

The jury were taken to the mill, saw it operated, and became convinced (all save two who dissented) that it was dangerous to operate such a machine in the kind of work then being done without its being provided with a guard.

It was the company's duty to see that this safety device was supplied and kept in position. The master is required to take reasonable precautions to secure the safety of his servants. A servant has the right to look to the master for the discharge of that duty.

In this instance the company had provided no guard to be attached to the rip-saw. True it is the foreman of that department of the mill had, the day before, improvised a guard and fitted it in place on the machine. This may be taken as the act of the master—the foreman standing in his stead.

So that when the work was commenced the day of the casualty the machine was fitted up with the requisite safety device. But before beginning to saw balustrade pieces out of the timber provided for the purpose, Stevens, the feeder, in charge of the machine, removed it.

This act of Stevens was negligence for which the master must be held responsible unless the "fellow servant" doctrine applies to exempt him from liability.

To bring the case within the exemption (exemption of the master from liability) this material fact must appear, that the servants engaged, one of whom is injured or killed, must be men in the same common employment *and engaged in the same common work* under that common employment. Stucke v. Railroad Co., 50 La. Ann. 200, 23 South. 342.

Where servants are engaged in different duties in the same establishment an injury resulting to one by the carelessness or negligence of another in the course of the latter's peculiar work does not fall within the rule which exempts the master from liability by reason of a fellow servant's negligence. Stucke v. Ry. Co., 50 La. Ann. 200, 23 South. 342; Coal Co. v. Reid, 2 Macqueen, 266; Ry. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787.

The only persons engaged in working the rip-saw in question were Stevens, the feeder, and Woodward, the off-bearer.

They were fellow servants. Stevens removed the safety guard. The off-bearer knew of this because he was there assisting in operating the machine. He, therefore, is to be considered as assuming the risk since he continued work knowing the increased danger of his position—by reason of the removal of the guard.

Hence, if the off-bearer had been injured or killed, instead of Merritt, there could be no recovery.

But with Merritt it was different. He was not an attendant on the rip-saw. He was not restricted even to any one department of the mill. His duties were to clean up the whole shop. He moved here and there through the mill in the performance of his task.

It is not shown he was at or near the rip-saw when Stevens removed the guard, or that he knew of its removal even. It is altogether likely he had no knowledge whatever of the situation.

Just prior to being struck by the piece of timber he had been directed by the foreman to pile up some lumber, some rubbish from the frame makers, and the foreman had told him to deposit the same near the rip-saw, and had showed him where to put it.

The place he had pointed out to him was at the front of the rip-saw and near it. It seems the intention of the foreman was that, later, some of the stuff Merritt was piling up should be run through the saw, ripped into blind slats. The pieces he was piling up near the rip-saw he was bringing from the back side of the mill.

When finished with that job he would be put to another, perhaps in another department, or section, or on another floor of the mill.

So he was not an attendant on the rip-saw; was not stationed near it; was not an assistant in its operation. There was no co-association between Stevens and Woodward, the feeder and off-bearer, respectively, of the saw, and Merritt, in the operation of the machine. The latter is not, under the circumstances, to be considered a fellow laborer in the same work. He was not engaged in the same common employment with Stevens and Woodward. There was no fellow service between them.

This being so, the rule of non-liability of the master for the negligent acts or omission of duty of servants resulting in injury to a fellow servant, cannot be here applied.

The danger to which Merritt was exposed as he approached the machine which dealt out death to him was not open or apparent. There was no negligence or carelessness on his part.

The judgment appealed from is found to be correct and the same is affirmed.

## On Rehearing.

### (Jan. 4, 1904.)

BREAUX, J. Plaintiff, widow of W. R. Merritt, brought this suit conjointly with her minor children, eight in number, of whom she is the tutrix, to recover the sum of $10,000, with costs, and interest per annum from judgment, as damages for the death of her late husband and father of her minor children from a blow received while at work in defendant's factory.

The jury awarded damages for plaintiff in the sum of $2,500, with 5 per cent. interest from date of the judgment. From the verdict of the jury and judgment of the court defendant prosecutes this appeal.

Witnesses state that plaintiff's husband was an industrious and useful man. His age was 43 years. At the time of his death he was earning wages of only $1 a day.

He was carrying lumber slips and putting them in front of and near to the rip-saw to be sawed into proper shape and dimensions; in other words, he had just brought pieces of timber to the saw, and was placing them behind the saw, and while near the machine putting down these lumber slips he was struck on the right temple by a piece of flying timber and thrown down. In a few days thereafter he died from the effects of the blow.

The rip-saw was sawing timber pieces to be cut down into two-inch balustrades; that is, after being sawed, they were dressed down to the proper size for balustrades. The edge of the saw was about two inches above the flat surface of the table. A small piece for the balustrades work was sawed out of a large piece, and the rip-saw run through twice in order to detach the small piece from the large piece. After the small piece was detached, the large piece (measuring about 5 by 5, and about 24 inches in length) was brought to the front of the machine in order to be run through to make another piece out of it. At the moment that the small piece was detached, instead of falling forward, it was pulled back by the large piece, and was caught by the saw and thrown forward, and on its way struck plaintiff's husband, and inflicted the fatal blow.

Two men attend to and work at the rip-saw. One is known as the "feeder" and the other as the "off-bearer." This saw revolves with a wonderful speed. The larger piece, to which we have before referred, is laid on the iron plate of the machine, in which the rip-saw, with its rim just above the table in question, is fixed. Its edge revolves to the front and in the direction of the "feeder." The large piece is pushed to the saw by the "feeder." It passes through the saw, and then the detached piece is taken and laid aside by the "off-bearer," and the larger piece is taken back to be sawed again, and to have taken therefrom another piece.

It happened that the "off-bearer" did not catch the small piece. It was pulled back to the saw as before stated, and hurled away, causing the death before mentioned. The rip-saw is always dangerous, and requires care and attention in running it. This machine has a fluctuating or rising table. The saw is stationary about the center in a slit of the table (a flat iron table in size 30 by 42 inches). By lowering the table, a larger edge of the saw is exposed. If, in this instance, the table had been lowered, and the saw thereby raised, as it were, then it would have given the saw a greater and broader cutting power, and then these pieces would have been entirely separated.

This saw, the weight of the testimony informs us, should be equipped with a "guard" or "spreader"; otherwise there is great danger every time the machine rips a piece of timber, for it may then fly back just as did the fatal piece in this case. This "guard" or "spreader" stands a short distance beyond the saw, and protects against the edge of the saw catching the piece of timber, if, as in this case, the "off-bearer" fails to take hold of the detached piece quickly after it had passed through the saw.

With reference to the necessity of a "guard" or "spreader" the testimony is conflicting. The preponderance, however, we think, is with the plaintiff. We are informed, among others, by the testimony of defendant's foreman of its sash and blind department, who says that he is very familiar with the running of rip-saws, that the "guard" in question is important in order, to quote from his testimony, "to prevent it being dangerous, or to prevent it from crowding the saw, and avoid accidents." He had put it on himself. It was not on at the time of the accident. It had been taken off by the "feeder" and laid aside. He further swears that he did not know that this appliance had been taken off, it having been but recently (the day before) put in by him.

This machine was on the upper floor, of which this foreman had charge. This foreman also testified that the "feeder" was an indolent man and careless; that he had hesitated in employing him; that he was not the man he wanted; that friends of the "feeder" spoke to him in behalf of the "feeder," and that, as he needed a "feeder," he hired him, and put him in that place.

The "guard" was cast aside by the "feeder" in the morning. In the evening plaintiff's husband was mortally wounded.

We think we are safe in concluding, after having again considered the testimony, that a "spreader" or "guard" is a necessary part of a rip-saw, and that it was negligence to run the machine in question without such appliance.

The foreman sought to shield himself against all responsibility in the matter by the statement that he was not aware that the "guard" in question had been taken off, and by the further statement that the "feeder" man was not as careful in that work as he should have been.

The machine was on the floor of which this foreman had the special supervision. The duty of inspection devolved upon him. He also, as he had the power to employ and discharge men under him (as shown by the evidence), should not have permitted a man to remain in defendant's employ whose indolence and carelessness increased the danger of the employment. The function of the "spreader" or "guard" was important. Although defendant says that the court erred in holding that had the "spreader" or "guard" been on the machine "at the time of the accident it would not have occurred," defendant's foreman testified with reference to this "guard" or "spreader" that the offending piece could not possibly have caught as it did, if the "guard" had been in its place.

If he did not see that it was no longer in place, it was none the less his duty to have seen it in time to prevent serious accident. The machine was operated a sufficient length of time to enable the foreman to become aware that the "guard" had been taken off. The rule relating to inspection requires at least ordinary attention of the foreman of the machinery, particularly when it is in the hands of one as deficient as he seemed to think the "feeder" in this case was.

We think that the decisions sustain the view that the master or his representative should be held to reasonable inspection. A number of decisions are referred to upon the subject in Black's Law and Practice in Accident Cases, § 68.

Upon the question of the "guard" or "spreader" the following inquiry of the defense implies that it is not as useless an appliance as imagined by a few of the witnesses:

"Can a foreman, situated as he was, intrusted of necessity with the supervision of a number of workmen, be expected to stand guard over each workman to see that he operates the machine just like it was up? If this be required, it would require as many foremen as there are workmen."

We can only say that, if machinery is in the hands of one in regard to whom the foreman should have felt more than ordinary concern, then ordinary prudence dictates the necessity of frequent inspection.

We will go one step further, and state that, in our view, as relates to the machine "feeder," who took upon himself to strip the machine of this safety appliance, the master is not protected by the fellow-servant doctrine, for the reason that the master, or his representative, the foreman, might in all probability have prevented the accident had they been as vigilant in the performance of a duty as the necessity of the occasion demanded. Moreover, it was not made to appear with any degree of certainty that the parties, the deceased and the "feeder," were in the same common employment.

One was employed at the machine, as before stated, and the other in carrying pieces of lumber from one part of the mill to the other. At the time of the fatal accident he was carrying, it is true, the pieces to the rip-saw, but it remains that deceased was an all-around laborer about the factory. Under the light of our decisions, he was not strictly in the same department in which the rip-saws were operated, although his work necessarily brought him near these machines.

We have endeavored in our decisions to maintain a just equilibrium between the master and his employés, in order that the master would not consider himself too much relieved of responsibility under an extreme fellow-servant doctrine or rule. On the other hand, we have sought to urge employés to be at least ordinarily careful.

Again, there was another way of doing the work, which would have been safer than even with the "guard." That was to lower the iron table and to cut through the larger piece of timber, and not to run it through twice, as was done, in order to detach the small piece from the larger piece on the second run through the saw.

From this it appears that there was a way to saw and resaw the pieces so as to separate them completely after the first passage through the saw.

Of this one of the witnesses testified: "It was dangerous to rip the pieces like it was being done; safe way was to rip clear through." We conclude by reiterating: The master or his representative should inspect the machinery, and see to a reasonable extent that it is operated so as to be safe to those who must work near it while it is being run.

We think the verdict and judgment have done justice between the parties.

For these reasons the verdict and judgment appealed from are affirmed.

PROVOSTY, J., concurs in the decree.

LAND, J., recuses himself, having been presiding judge in the district court.