(51 South, 184.)

No. 17,528.

BUSBEY v. HAMITER–BUSBEY MILL & ELEVATOR CO., Limited.

(Nov. 29, 1909. Rehearing Denied Jan. 17, 1910.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 247*)—INJURY TO SERVANT—NEGLIGENCE OF SERVANT—PROXIMATE CAUSE OF INJURY.

Failure on the part of the plaintiff to exercise due caution in removing an obstruction from dangerous machinery is the proximate cause of the accident; and, as the plaintiff thereby contributes to his misfortune by his own negligence and want of care, he is not entitled to damages.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 795–800; Dec. Dig. § 247.*]

2. MASTER AND SERVANT (§ 247*)—ACTIONABLE NEGLIGENCE — PROXIMATE CAUSE OF INJURY.

The negligence of a defendant when it is not the proximate cause, or the concurrent cause, but is merely a remote cause, will not support an action for damages against him; for, in order to render a defendant liable, his negligence must be such as proximately contributed to the injury. In the instant case the absence of a shaker or screen was not the proximate cause of the accident, for the manner in which plaintiff performed his work was the proximate cause.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 795–800; Dec. Dig. § 247.*]

Appeal from First Judicial District Court, Parish of Caddo; A. J. Murff, Judge.

Action by Frank B. Busbey against the Hamiter-Busbey Mill & Elevator Company, Limited. Judgment for plaintiff, and defendant appeals. Reversed.

Wise, Randolph & Rendall, for appellant. Hall & Jack, for appellee.

BREAUX, C. J. Plaintiff brought this suit to recover damages in the sum of $10,000.

The jury allowed him $8,750.

Judgment was accordingly rendered.

Plaintiff is 24 years of age, fairly intelligent, and was in the employ of the defendant company.

While engaged as the miller, his hand was caught by the rollers of a chopmill of the defendant. Before the machinery could be stopped, his hand was badly crushed. It had to be amputated.

Plaintiff as the miller had charge of the mill.

His complaint is that the defendant was negligent in not having a shaker or sifter in the mill, or, in its absence, in not having a guard or protecting cover over the live rollers.

Defendant runs a gristmill, and manufactures chops and corn meal.

On the day of the accident plaintiff had been in the employ of the defendant as miller about 10 days. He avers that he had had no previous experience, and that he was not aware of the defects and dangers in operating the mill in the absence of a shaker.

The defense sets out that its machinery in this mill was manufactured by a large and responsible factory, and that everything was in complete running order.

The defendant also sets out that plaintiff had experience as an operator of mills; that, if there were defects, they were apparent and he made no objection; that he thereby voluntarily assumed all risks; that the accident was caused by plaintiff's fault; that he undertook to remove the obstruction, and was not careful; that there were other and safer methods of removing it to which he should have resorted.

There was originally a "shaker" in the mill, or "sifter," through which the corn passed, and was separated from shucks, cobbs, and sticks and other obstructions which might obstruct the mill before reaching the crusher or live rollers.

This "shaker" had been removed when the accident happened. It was put back after the accident.

A splint about 2 feet in length and 1½ inches in width was conveyed with the grain

to the feeder, where it was caught and was stopping the operations of the rollers.

It was the duty of the miller to remove this splint which was clogging the mill.

The feeder in which this splint was caught was about one foot above the corn-crushing roller, by which plaintiff's hand was caught and crushed.

Feeders for the mill consist first of a larger hopper.

The hopper is represented in the printed cut annexed, also the feed box.

The cut represents the machine after the door had been opened. The miller was standing at the point, A., or near to it (represented in the cut), when he attempted to remove the splint in the feed box. He faced the east, and with his left side near the machine he attempted to take out the splint with his left hand. It would have been safe had he stood in front and facing the machine, and used his right hand.

The evidence is that the corn is placed in the feed hopper. It then comes down into

These rollers and the feed box are covered when the mill is operating. There is a door which closes the front part of the machine placed there for the convenience of the miller. He opens it to remove obstructions.

This the plaintiff did just before the accident. On seeing the splint, he took hold of it and removed it. It was while he had hold of it that the accident happened.

the feed box above the live rollers through an automatic device. When there is an obstruction because of foreign matter, the obstruction is to be removed by hand or with a stick.

The feed box is eight inches wide at the top, and inclines down each side to about four inches at the bottom.

With a shaker it sometimes happens that pieces of timber get through.

The corn falls between the boards of the feed box and strikes the live rollers. These boards act like wooden gutters.

These two boards just above the rollers are of the same length as the rollers.

There is also a magnet which separates the corn from the metal, and, as before stated, the shaker separates the sticks, cobbs, and other obstructions.

At the time that plaintiff was employed, the assistant manager directed him to remain with the miller, Watson, in order to learn to handle the plant, and the assistant manager said to him that, as soon as he would be competent, he would place him in charge as miller.

The assistant manager testified that the one who was miller at the time and whom he was about to promote was quite competent.

He told the plaintiff to observe him closely, and to learn from him all the duties that would devolve upon him, plaintiff, as a miller.

There seems to be no question about the competency of the first miller.

After a few days plaintiff called on the assistant manager and stated that he felt competent to handle the plant.

The assistant manager then turned it over to him.

Plaintiff had been running the mill several nights when he met with the accident. The night service was easier for reasons stated, and for that reason he was given that work.

When the accident happened, plaintiff was standing before the live rollers, with his left side next to the rollers.

The evidence informs us that there were three safe ways of removing the obstruction—one by facing the machine and pulling the obstruction directly toward his body.

We will state here with regard to the first way of removing the obstruction. It appears that there was flexibility about the machine sufficient to enable the miller to pull out the obstruction.

Had the method before mentioned been followed, it would have been perfectly safe, as his hand would then have been protected by the trough before alluded to, which stands above the live rollers. This trough being at right angles in front of plaintiff, the hand would have been held up by the upper edge of the trough board, and would thereby have been protected. It could not then have been possible for the hand to fall (while snatched back) to the live rollers.

Another way of getting rid of the obstruction in the machine was by stopping the mill, which is seldom done, however.

Another way was to reach down for the obstruction from above; that is, from the opening.

No question but that there would have been less danger if a "shaker" or "screen" had been in use.

It is difficult to determine the extent of the diminution of the danger by the use of this device.

The plaintiff has it that the accident would have been almost impossible if such a "screen" had been in use, while, on the other hand, the defendant has it that the "shaker" or screen is not a safety device; that it is separate from the crushing mill itself, and is at some distance from it, about 20 feet, and only used to remove excessive trash, cobbs, and splinters which are mixed with the corn.

We are not impressed by the extreme views of plaintiff or defendant on the subject. A machine should always be as complete as possible.

The defendant was not entirely free from failure to perform his part in operating the mill. Neither was plaintiff. He was not free from all negligence in taking hold of the splint as he did, and pulling it back side-

ways from the machine. He should have stood at right angle to the machine.

The absence of the "shaker" was negligence on the part of defendant, but negligence of such a character that it is referred to by witnesses as one that amounted at most to a hindrance in operating the mill, but did not add, as they thought, to the danger of the operation. It was not the proximate cause of the misfortune. The proximate cause was plaintiff's failure to be cautious in removing the obstruction.

Plaintiff quotes from decisions of this court in support of his claim, notably the case of Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497.

In that case the workman was not negligent. He was performing his work when the misfortune arose because of defectiveness of the machinery. For that reason, judgment was in favor of the plaintiff in the suit.

The same is true of the other decisions cited by plaintiff. In no case, the court said, the plaintiff was at fault. On the contrary, it was said in the syllabus of the first-cited case (111 La. 159, 35 South. 497) in this action sounding in damages the workman killed was in no way at fault.

Actions in which the workman was careless and imprudent, and in which in consequence no damages could be allowed, have given rise to many discussions.

It began in England and resulted in a rule which has been accepted by nearly all the courts in this country.

The rule in part is, in substance, if the plaintiff had not contributed to the misfortune by his own negligence and want of ordinary care and caution, the misfortune would not have happened.

In such a case no damages are allowed.

Only in one or two of the states the rule has not been accepted.

In Cooley on Torts (2d Ed.) p. 812, the courts of Louisiana are listed among the courts that have accepted the rule.

The case of Laicher v. New Orleans, 28 La. Ann. 320, and Johnson v. Canal Company, 27 La. Ann. 53, are cited as evidence of Louisiana's acceptance of the rule.

These decisions have not been overruled.

The plaintiff had received instructions. He had expressed himself as satisfied that he had received sufficient instructions. He had been placed in charge as miller at his own instance.

The testimony is that the work of a miller is not difficult, and is not dangerous; that the machinery of defendant's mill is not complicated, and requires no great experience for operating it. Only the most ordinary skill was required, and that plaintiff had.

The negligence of defendant was not the proximate cause of the injury, nor was it the concurrent cause. It was remote, not directly connected with the misfortune.

The duty to remove the obstruction which found its way to the live rollers was a duty which the average miller was competent to perform. It was an ordinary obstruction.

The negligence, in order to render the defendant liable, must be such as proximately contributed to the injury.

The absence of the shaker or screen was not the proximate cause, but the manner that the plaintiff performed his work at the moment, of the sad and severe misfortune.

It is deplorable; at the same time it affords no ground for judgment allowing damages.

For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is avoided, annulled, and reversed. It is ordered, adjudged, and decreed that plaintiff's demand be rejected, at his costs in both courts.