(55 South. 754.)

No. 18,418.

CHRISTY v. TREMONT LUMBER CO.

(June 15, 1911.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§§ 101, 102, 125*)— INJURIES TO SERVANT—DANGEROUS PREMISES—DUTY OF MASTER—CONTRIBUTORY NEGLIGENCE.

In general a master is bound to exercise ordinary care in respect of the machinery, appliances, tools, materials, and premises which he furnishes to his servants for the prosecution of the work required of them. If he fail in this regard, and injury result, he is liable. It is his duty not to require his servants to work for him on dangerous premises, or in dangerous buildings, or with dangerous tools, machinery, material, or appliances. If the servant is injured while in the discharge of his duty, and without his own contributory fault, through the master's dereliction in this respect, the servant may have his action against him. Personal negligence is the gist of the action, and it must therefore appear, to render the master liable, that he knew, or from the nature of the case ought to have known, of the unfitness of the means of labor furnished to the servant, and that the servant did not know, or could not reasonably be held to have known of the defect. Knowledge on the part of the employer, and ignorance on the part of the employé, are of the essence of the action; or, in other words, the master must be at fault and know of it, and the servant must be free from fault and ignorant of his master's fault, if the action is to lie. Beach on Contributory Negligence, § 346; Parrenin v. Crescent City S. Y. & Slaughterhouse Co., Ltd., 120 La. 75, 44 South. 990.

[Ed. Note.—For other cases. see Master and Servant, Cent. Dig. §§ 171–192, 243–251; Dec. Dig. §§ 101, 102,.125.*]

2. MASTER AND SERVANT (§ 196*)—FELLOW SERVANTS.

Employés in a sawmill, who are not coassociated in the same work, are not fellow servants. Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497; Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475; Stucke v. Railroad Co., 50 La. Ann. 200, 23 South. 342.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 486–488; Dec. Dig. § 196.*]

Appeal from Thirteenth Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Action by Henry P. Christy against the Tremont Lumber Company. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Barksdale & Barksdale, Stubbs, Russell & Theus, and Grisham, Oglesby & Stennis, for appellant. Mathews & Gamble, for appellee.

SOMMERVILLE, J. Defendant company operates a large lumber plant, where modern machinery and devices are employed for carrying on the business. Lumber is conveyed on chains from the kiln to the sorting shed or compartment, and by electric car from the sorting shed to the storage shed.

Plaintiff was employed as a laborer in connection with the motor car which transported lumber between the sorting and storage sheds. It was his duty to adjust the tongs suspended from a frame in front of the motor in taking up a load of lumber in the sorting shed and in carrying it to, and depositing it in, the storage shed. He was known as a tong hooker. While in the active discharge of his duties, he was injured, and he is now suing defendant in damages, alleging that the accident happened through the fault of defendant company.

Defendant answers that plaintiff assumed the risks incidental to his employment, and that he was careless and negligent after having been repeatedly warned, and that he cannot recover.

In oral argument defendant pressed the

fellow-servant doctrine; but, as that is a special defense, it should have been specially pleaded. Buechner v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455. But, as the testimony with reference to it is in the record, it will be considered.

The method pursued by defendant was to have two pieces of lumber called "bolsters," measuring 4 by 4 inches, about 4½ feet long, placed crosswise on the floor of the sorting shed, upon which the lumber brought into the shed from the kiln was deposited. These 4x4s were about six feet apart, and they projected only a few inches beyond the sides of the pile of lumber which rested upon them.

It then became the duty of the electrician in charge of the electric car, which was suspended from an overhead rail, to take position over the pile of lumber to be transported to the storage shed, and to lower the tongs, with plaintiff on the frame, for him to adjust the tongs under the ends of the 4x4 pieces. The electrician would then raise the tongs, thus lifting the load of lumber, together with plaintiff, to a sufficient height, and carry the load some few hundred yards to the storage shed, where it was to be deposited. Arriving at the proper place in the shed, it became the duty of plaintiff to get on the pile of lumber and turn it half around, so that the load might be lowered to one side of the gangway, as the lumber was all piled with the ends of the piles abutting the gangway. The engineer would then lower the load in proper position, either on the floor of the shed or on top of another pile in course of building. The plaintiff would release the tongs when the load was placed in position, thus leaving it, in its entirety, including the 4x4 pieces upon which the lumber had been carried from the sorting shed.

The contrivance appears from the evidence to be unique and useful, and with care and sound materials must have been reasonably safe.

It was while a load of lumber was about being lowered into position in the sorting shed that plaintiff was injured. The car had stopped, the signal had been given, plaintiff was on top of the lumber, the load had been turned in the right direction, the engineer had begun to lower the load, when the two pieces of 4x4 broke, the load of lumber was precipitated to the floor, together with plaintiff, whose arm and leg were caught and broken in the scattering lumber.

Defendant says that plaintiff was negligent, disobedient to instructions, and at fault.

Plaintiff appears to have been a man of ordinary intelligence, about 20 years of age, with some experience as a laborer in and around sawmills. On applying for work, he was told by the foreman to go into the lumber transporting department and to watch the tong hookers, and, if he could do what they were doing, he would give him employment. After a half day of observation, plaintiff told the foreman that he could do the work of a tong hooker, and he was engaged, without further instructions from the foreman; and he was thus employed for several days, when the accident complained of happened. The testimony shows that plaintiff did exactly as he saw other tong hookers do in discharging their duties, yet defendant says he was negligent and at fault in getting on the load of lumber while it was suspended and about to be lowered into place on the floor. The same thing was done by the other tong hookers, and we conclude from the evidence that it was necessary for plaintiff to get on the lumber to swing the pile or load halfway around from the electric car. Defendant says that plaintiff should have got off the lumber and onto the tong frame just as soon as the suspended pile of lumber was in position to be

lowered. The other tong hookers did not get off the lumber pile while it was being lowered; and he was told to do as he saw them do in discharging their duties.

It appears that the two 4x4 pieces upon which the pile of lumber rested and was being carried was heard by the electrician to crack before they broke, and the load of lumber was scattered in its fall; that he shouted "look out" to plaintiff; that plaintiff, not hearing the cracking of the 4x4 pieces, thought the electrician was telling him to look out, as the pile was not yet in true position to be lowered, and he (plaintiff) was looking down the side of the pile to make it right, when he and the lumber fell. Another witness, on the floor, saw or heard the cracking pieces and shouted to plaintiff, but the latter did not hear him. Even if he had heard, we doubt if he (plaintiff) could have saved himself. This last witness further expresses the opinion that the load might have been lowered in safety, after the cracking of the 4x4 pieces, if the electrician had not suddenly arrested the descent of the load on hearing the cracking pieces. We cannot agree with this opinion; besides the electrician and plaintiff deny that the load had begun to descend. The electrician says that he was in the act of arranging for the descent, when he heard the cracking sound; that he sought to hold the tongs in position, and to warn plaintiff of the trouble. He held the tongs, but he failed to warn plaintiff. There may be some doubt as to the exact condition of affairs just at that moment, but we are of the opinion that if the electrician jolted the load of lumber that it was not the proximate or immediate cause of the accident, and that it therefore becomes unnecessary to decide the point. And it is not necessary to decide whether the electrician, in charge of the motor car, and plaintiff, a common laborer on the load of lumber which was being push-ed by the motor, are fellow servants, or not, for we are of the opinion that plaintiff could not have saved himself from injury if the tong frame had not been jolted by the electrician. And in view of our decision in Evans v. Louisiana Lumber Co., 111 La. 534, 35 South. 736, defendant is liable for the fault of its skilled employés for damages inflicted by him upon another unskilled employé. When these two pieces of 4x4 upon which the lumber was resting broke, the lumber had to fall, and the resulting jolt would most likely have thrown plaintiff from a position on the tong frame, if he had secured one; but, in his ignorance of the breaking of the 4x4 pieces, he could not have been expected to know that there was any danger. He had not seen other bolsters break; he had been told by the electrician that they sometimes broke, and to be on the watch out; but he was not told that defendant was in the habit of furnishing defective appliances, and he could not have supposed that these particular pieces would break.

[2] Defendant also argues that the negro laborers who placed the 4x4 pieces under the lumber piles in the sorting shed are fellow servants of plaintiff, and that it cannot be held for their fault and negligence in selecting unsound pieces to be used in transporting this particular pile of lumber. The testimony fails to disclose that plaintiff had anything to do with selecting these pieces or with those laborers. They were not in the same compartment; they did not work together; and they had no opportunity of observing the methods employed by one another in the discharge of their respective duties. Employés in a sawmill, who are not coassociated in the same work, are not fellow servants. Merritt v. Victoria Lumber Co., 111 La. 159, 35 South. 497; Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475; Stucke v. Railroad Co., 50 La. Ann. 200, 23 South. 342.

Plaintiff had no means of seeing the pieces

of 4x4 before or after the lumber was piled upon them. They were almost entirely hidden from his view. One side rested on or within about two inches of the floor, and the lumber rested on another side; and defects in the other two sides, while under the pile of lumber, can hardly be said to have been visible.

It was the duty of defendant to have known the true condition of this material. One of the broken 4x4 pieces was offered in evidence and exhibited in court. It contains a large knot hole at the place where broken. It is certainly a very defective piece, and the testimony shows that the other piece was even more defective. Defendant is clearly at fault in permitting such material to be used for the purpose which the testimony shows it was used.

[1] The employer must furnish reasonably safe appliances to his employé with which to work, or else he must show, where injury is sustained, that the employé knew, or should have known, the danger to which he was subjected. We do not think that defendant has done its duty in this case. It was at fault, and it has been properly held to be liable. Parrenin v. Crescent City S. Y. & Slaughterhouse Co., Ltd., 120 La. 75, 44 South. 990.

The proximate cause of the injury was the unsound bolsters which broke beneath the stack of lumber, and which in turn, caused the injury to plaintiff.

This is a stronger case than that of the Grand Trunk Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266, where it was held that recovery might be had if the negligence of the defendant contributed; that is to say, had a share in producing the injury. Here it was primarily at fault.

Plaintiff sustained a broken arm and a crushed right leg. The leg was amputated some inches above the knee. He suffered much, and the jury awarded him $7,000 as damages.

We are of the opinion that the verdict is not excessive, and it will be affirmed.

Plaintiff has answered the appeal and asks for interest.

It is ordered, adjudged, and decreed that the verdict and judgment appealed from be amended by adding legal interest from date of judgment in the lower court, and, as thus amended, it be affirmed. Appellant to pay costs of appeal.